HENRY D. PALOCI III (California State Bar No. 268970)
hpaloci@hotmail.com
Henry D. Paloci III PA
POB 3906
Westlake Village, CA 91359
Telephone:  805.279.1225
Facsimile:  866.565.6345
Attorneys for Creditor TROJAN CAPITAL INVESTMENT LLC

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In Re:<br><br>TOMER FRIDMAN,<br><br>　　　　Debtor(s). | Case No. 1:16-bk-11729-MB<br><br>Chapter:    11<br><br>**REPLY AND SUPPLEMENT RE: MOTION TO DISMISS CASE PURSUANT TO 11 USC 1112(b)**<br><br>**Hearing Set:**<br><br>**Date:    May 30, 2017<br>Time:    1:30 PM<br>Courtroom: 303<br>Place:   21041 Burbank Blvd.<br>　　　　Woodland Hills, California** |

**COMES NOW** TROJAN CAPITAL INVESTMENT LLC, a secured creditor in this action and movant with respect to the Motion to Dismiss [Docket Entry No. 137] (the "Motion") filed in this case (hereinafter "Creditor" or "Movant"), by and through undersigned counsel, and files this supplement and reply to said Motion (this pleading will be referred to herein as the "Reply" to distinguish it from a "Supplement" filed by the Debtor [Docket Entry No. 148] which will be discussed herein).

1.    It is difficult to describe whether this pleading is a reply to opposition filed by the debtor or a supplement to the motion. Debtor has not opposed the factual bases set forth in the Motion at all. Instead, Debtor has elected to file a pleading titled "Notice of Defective Notice and Service of Motion to Dismiss." [Docket Entry No. 149]

2.    The Notice of Defective Notice appears to be an effort to avoid facing the issues raised in the Motion to Dismiss. Instead of replying to the Motion, the Debtor, at his peril, filed a pleading in which he suggests that a proper party in interest did not file the Motion. The inference it appears that one is to draw from this pleading is that the Debtor does not feel compelled to oppose the Motion because it fails for proper notice. Because the Court can dismiss or convert this case without the existence of Trojan's Motion to Dismiss, and because the Motion brings these issues to the Court's attention regardless, Trojan submits that the Debtor must (or should have) faced the issues raised by Trojan in the Motion. Trojan has filed this Motion as a vehicle through which it can be heard on the issue.

3.    In any event, neither the Motion nor its service was defective. Trojan notes that on page 2 of the Motion there is reference to "Trinity Financial Services LLC" as the Movant, which is incorrect. However, in five other places in the Motion and on the docket, the Movant is correctly shown as "Trojan Capital Investment LLC." To clarify, Movant has filed a Notice of Errata contemporaneously with this pleading.

4.    The fact that the Debtor actually took the time to file a pleading respecting the Motion suggests that the Motion provided sufficient notice of its contents. As stated, the Debtor fails to oppose the factual bases to the Motion at his own peril.

5.    Debtor was ordered by the Court to file information regarding his finances before May

16, 2017. Debtor filed pleadings on May 16, 2017, which purport to meet that obligation, but they are wholly inadequate with respect to the Debtor's income and expenditures. Specifically, Debtor filed a pleading titled Supplemental Report of Debtor Pursuant to Order Setting Scheduling and Case Management Conference and Exhibit(s) [Docket Entry No. 148] (the "Supplement"). The Supplement contains information about the state of the case, which is useful, and it discloses cash flow, which is also helpful. But it is problematic that these pages and pages of information and reports that do not shine any light at all upon the finances of the Debtor.

6.     While it is nice for purposes of liquidation to know that the Debtor believes that his business is worth $195,000 (Supplement, p.2, line 18) or $215,000, (Supplement, Exhibit 1, p.20), it is of far more interest, at least to Trojan, where all of the Debtor's income might be going. The Supplement shows that the net income of White City 26 Inc. for the first three months of 2017 is $60,973.04 (Supplement, p. 23). The Supplement also shows that that the net income of White City 26 Inc. for 2016 was $371,357.30.

7.     Debtor's income information, at least for 2016, is suspect. The Debtor featured himself in an article in *Realty Today* on March 28, 2016, an article in which he is quoted, in which he purports to have exceeded $100 million in real estate sales "in a year." This sentiment is echoed in an article in the *Los Angeles Times* on March 26, 2016, in which the Debtor represents that he is "trying to stay humble." Copies of these articles are attached hereto as Exhibits 1 and 2. Trojan believes, based on the Debtor's own representations to the public, that even at $799,707.58 in gross income for 2016 (Supplement, p. 24), that the Debtor is understating his income.

8.     But even if the Debtor's disclosures as to business income and net income are completely accurate, they still beg the question of *where the money has gone*. Debtor has $60,973.04 in net income for the first quarter of 2017, and $58.82, total, <u>for five months</u>, deposited to his DIP

account. Trojan, the Court, the US Trustee, and all parties in interest have a right to know where the Debtor's money is going. The Court directed the Debtor to open DIP account(s) so that interested parties can monitor his finances. The Debtor opened an account and has not used it at all. Debtor is engaged in an ongoing violation of a Court order by not using this account and by not maintaining even a minimal level of financial transparency.

9. Since Trojan filed this Motion the Debtor filed another MOR [Docket Entry No. 140, for April 2017] with zero income and zero expenses. Debtor is on notice at this point that he is expected to use his DIP account for personal expenses and willfully refuses to do so.

10. Since Trojan filed its Motion to Dismiss, the Debtor filed an adversary pleading in which it accuses Commission Funding Solutions of predatory lending. Insiders to the Debtor, such as his mother, are listed as defendants as well. As shown in the complaint in that adversary proceeding, the bankruptcy estate may have collectibles. While Trojan would prefer straight dismissal of the case so that it can foreclose, it may be best for the other creditors for the case to convert to Chapter 7.

Conclusion

The Debtor has failed to even reach a bare minimum of transparency with respect to his finances in this case, and should not be permitted to remain parked in Chapter 11.

There is cause to dismiss the case under Section 1112(b)(4)(A), (B), and (E). The Court should dismiss the case or convert it to one under Chapter 11 of the Code.

Dated: May 23, 2017        TROJAN CAPITAL INVESTMENT LLC

By:___/s/ Henry D. Paloci III_____
HENRY D. PALOCI, III
Attorney for the Creditor

HENRY D. PALOCI III (California State Bar No. 268970)
hpaloci@hotmail.com
Henry D. Paloci III PA
POB 3906
Westlake Village, CA 91359
Telephone:  805.279.1225
Facsimile:  866.565.6345
Attorneys for Creditor TROJAN CAPITAL INVESTMENT LLC

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In Re: | Case No. 1:16-bk-11729-MB |
| TOMER FRIDMAN, | Chapter:   11 |
| Debtor(s). | **DECLARATION OF HENRY D. PALOCI III IN SUPPORT OF MOTION TO DISMISS** |

### DECLARATION OF HENRY D. PALOCI III

Henry D. Paloci III, hereby declares as follows:

1. I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2. I am attorney licensed to practice before this Court and in the federal and bankruptcy courts of the Southern, Eastern, Northern, and Central Districts of California, and in the Middle and Southern Districts of Florida.

3. I reviewed the articles attached to this pleading as part of my research to prepare this pleading. Both articles exist and were reported by their respective sources. I infer from my reading of those articles that the Debtor had knowledge of those articles and participated (probably by interview) in their publication.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _23__th day of _____May_____, 2017 at ___Westlake Village_____, California.

___/s/ Henry D. Paloci III_____
HENRY D. PALOCI III

4/6/2017 Hollywood A-Listers Real Estate Agent Tomer Fridman Surpasses $100-million Closed Sales : Finance & Mortgage : Realty Today

Case 1:16-bk-11729-MB    Doc 152    Filed 05/23/17    Entered 05/23/17 22:39:50    Desc
                        Main Document        Page 7 of 12

# REALTY TODAY

NEWS | COMMERCIAL | BUY & SELL | INVESTING | HOME & DESIGN | FINANCE & MORTGAGE | LIFE | VIDEO

ADVERTISEMENT

Sell with REX and pay only 2%. FIND OUT HOW — REX REAL ESTATE

# Hollywood A-Listers Real Estate Agent Tomer Fridman Surpasses $100-million Closed Sales

Posted by **Staff Reporter** on Mar 28, 2016 09:15 AM EDT

ADVERTISEMENT



SHOW YOUR LOVE AND HELP END ALZHEIMER'S — THE LONGEST DAY — alzheimer's association — REGISTER NOW



Khloe Kardashian, Lamar Odom, Kris Jenner, Kendall Jenner, Kourtney Kardashian, Kanye West, Kim Kardashian, Caitlin Jenner and Kylie Jenner attend Kanye West Yeezy Season 3 on February 11, 2016 in New York City. (Photo : Getty Images/Jamie McCarthy)

Sotheby's International Real Estate agent Tomer Fridman surpassed the $100-million mark for closed sales in a year as partner and executive vice president at Ewing & Associates Sotheby's International.

"Feel the Light" Jennifer Lopez' agent Fridman, handled the sale of "Keeping Up with the Kardashians" star Khloe Kardashian and former LA Lakers Lamar Odom's $5.499 million mega-mansion. Since 2013, The agent had built a name handling the Hollywood's A-listers' various real estate deals, including the $20-million Hidden Hills manor of Kim Kardashian and Kanye West.

Fridman, with a career in dealings in rarefied air, had been known for a personality that veered to the cosmetic elements. Fridman possesses an authentic charm that was optimal for elite clientele who lived behind guarded walls. Ewing founder Roger Ewing described Fridman as a sweetheart of a guy and very popular around the industry. The agent had the ability to calm emotions, as well as work well in complex negotiations with varying egos, according to the Los Angeles Times.

## FOLLOW US

Facebook | Twitter | Google+ | Rss

## NEWSLETTER

Subscribe to the Realty Today newsletter!

Enter email address — SIGN UP

## EDITOR'S PICKS


**Real Estate Advice: How to Quickly Sell Your Summer Home**
Read More »


**Is a Private Island a Good Real Estate Investment?**
Read More »


**Is San Francisco Commercial Real Estate Taking a Downturn?**
Read More »

**When is the Best Time to Buy a Home?**
Read More »


**Should You Buy a Real Estate Property Now in the UK?**
Read More »

ADVERTISEMENT

4/6/2017 Hollywood A-Listers Real Estate Agent Tomer Fridman Surpasses $100-million Closed Sales ? France 2 Montage : Realty Today

Case 1:16-bk-11729-MB    Doc 152    Filed 05/23/17    Entered 05/23/17 22:39:50    Desc
                         Main Document    Page 8 of 12

Calabasas office said that the agent was always passionate about real estate, even way before he got into the business in the '90s. Isidora was born in Romania and grew up in Israel. In the 1980s, she emigrated to the San Fernando Valley with her husband Gideon and a younger Tomer, according to Sotheby's International Realty.

Fridman's mother recounted a time when she asked if 10-year-old Tomer wanted to watch a film. He replied by saying that he would much rather go look at a new gated community in Calabasas. Isidora stated that even as a child, Tomer was hooked on real estate.

"Love Yourself" singer Justin Bieber was also represented by Tomer in his $7.2-million deal for involving the Calabasas pad in 2014. The real estate agent's other notable clients include "Toxic" Britney Spears, "The Talk" Sharon Osbourne, and "A Public Affair" Jessica Simpson.

TAG:  Tomer Fridman clients ,  Tomer Fridman email ,  Tomer Fridman instagram ,  Hollywood ,  Hollywood life ,  Hollywood Gossip ,  Hollywood real estate ,  Hollywood real estate school ,  Hollywood real estate zillow ,  Hollywood real estate show ,  Khloe Kardashian Lamar Odom ,  Khloe Kardashian ,  Lamar Odom

Get the Most Popular RealtyToday Stories in a Weekly Newsletter

Enter your Email Address    Subscribe

© 2015 Realty Today All rights reserved. Do not reproduce without permission.
ADVERTISEMENT

### Shop Related Products


Thank You for Being Late: An Optimist's …
$16.80
(499)


The Millionaire Real Estate Agent: It's Not …
$15.22
(557)


How to Make it Big as a Real Estate Agen…
$13.99
(60)


How to Become a Million Dollar Real …
$16.95
(21)


Capitalism and Freedom: Fortieth…
$14.13
(374)


Real Estate Agent Revolution (Beg…
$21.34
(4)


The Miracle Morning for Real Estate …
$13.63
(304)


Real Estate License Exams For Dummies
$16.27
(159)

 Ads by Amazon

### TRENDING TODAY

Sponsored by Revcontent

Dead Simple Trick Brings Any Battery Back To Life

The Hidden Reason You Feel Overweight and Are Always Tired

Why Doctors in the Know No Longer Prescribe Metformin

Cute Russian Babes Want to Meet American Men

# Tomer Fridman, the Kardashians' real estate agent, tries to stay humble



Tomer Fridman, real estate agent to the stars, handled the sale of Lamar Odom and Khloe Kardashian's $5.499 million home, above, to Kaley Cuoco-Sweeting and Ryan Sweeting. (Riley Jamison)

By R. Daniel Foster

MARCH 26, 2016, 6:00 AM

If you're celebrity real estate titan Tomer Fridman, sometimes you're helping a Kardashian drop millions on a new mega-mansion, and other times you're mopping up wildlife droppings.

"I'll climb into attics; if I need to, I'll clean up coyote poop from a kitchen. I do it. I just do what it takes," the 39-year-old said. "You have to stay humble when dealing with high-profile people. They're the superstar, the celebrity. Not me."

Fridman has built a name representing the Kardashian clan's numerous real estate deals since 2013, including the $20-million sale of a Hidden Hills home to Kim Kardashian and Kanye West.

Other notable clients: Britney Spears, Jennifer Lopez, Sharon and Ozzy Osbourne, and Jessica Simpson. He also handled the $7.2-million sale of Justin Bieber's Calabasas digs to Khloe Kardashian in 2014.

Last year Fridman crushed the $100-million mark for closed sales in a single year as partner and executive vice president with Ewing & Associates Sotheby's International.

Given a career finessing deals in such rarefied air, one might expect a personality that veers to the cosmetic. Instead, Fridman possesses an authentic charm that disarms — optimal for elite clientele who live behind guarded gates. "He's a sweetheart of a guy, very popular around the business," said Ewing's founder, Roger Ewing. "He has the ability to calm emotions and works well in complicated negotiations with a lot of egos."

After quoting Fridman's boss, it would seem disingenuous to next quote his mother. But Isidora Fridman is Tomer Fridman's 10-year, 50/50 business partner; both at Ewing's Calabasas office and in a burgeoning empire the pair have built as co-owners of Sotheby's Israel brand. Tomer Fridman is chief executive.

"Tomer's always had a passion for real estate, even way before I got into the business in the 1990s," said Isidora, who was born in Romania and raised in Israel. In the 1980s she emigrated from Israel to the San Fernando Valley with her husband, Gideon, and Tomer.

Isidora recounts a time when she asked if 10-year-old Tomer wanted to see a movie. "He said, 'Mom, you know, I'd really prefer to go look at this new gated community in Calabasas,'" she said. "Even as a child, he was hooked on real estate."

The Fridmans keep an apartment in Tel Aviv. Their Tel Aviv market is a portal to European deals, key to a global real estate trade that increasingly fuels Los Angeles sales, especially in celebrity-trendy Calabasas.

The Fridmans don't so much handle individual clients as they navigate the labyrinthine teams behind them. "There's a lot of moving parts in these negotiations," said Tomer, known for being highly protective of clients. Added Ewing: "Tomer understands the balance between coming from a strong position, and still remaining friends. This is a small community."

So small that the Fridmans both live amid the Kardashians in the Oaks of Calabasas. Done in shades of gray, the walls of Tomer's postmodern digs are adorned with Joan Miro color dashes amid monochrome furnishings.

A Tibetan mastiff might feel at home amid the Philippe Starck Louis Ghost chairs. But true to his affable nature, Fridman prefers rescue dogs, and both of his are mutts: Griffin and Chloe.

To keep clients happy, he offers a concierge service, says he is more a representative than a salesman, and is available 24/7 for anything.

Fridman's business and social lives sometimes fuse, given his orbit around Planet Kardashian. He's a regular at Kris Jenner's Christmas Eve bash, held at her Hidden Hills home. And yes, Fridman has Kim Kardashian's emoji app, Kimoji, loaded on his iPhone.

"I always support the client," said Fridman.

Copyright © 2017, Los Angeles Times

A version of this article appeared in print on March 26, 2016, in the News section of the Los Angeles Times with the headline "Amid the egos, Fridman keeps it real" — Today's paper | Subscribe

**This article is related to:** Real Estate, Business, Khloe Kardashian, Israel, Jennifer Lopez, Jessica Simpson, Britney Spears

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
POB 3906, Westlake Village, CA 91359

A true and correct copy of the foregoing document entitled: REPLY
 will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) ___05/23/2017____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

US Trustee, ustpregion16.wh.ecf@usdoj.gov; Margaux Ross, margaux.ross@usdoj.gov; Adam Barasch, efiling@severson.com; William Brownstein, brownsteinlaw.bill@gmail.com; Daniel Fujimoto, wdk@wolffirm.com; Todd Garan, ch11ecf@aldridgepite.com; Jamie Hanawalt/ Gilbert Yabes, ecfcacb@aldridgepite.com; Erica Loftis, erica.loftis@buckleymadole.com; William McDonald, caecf@tblaw.com; Randall Mroczynski, randym@cookseym.com; Kelly Raftery, bknotice@mccarthyholthus.com; Valerie Smith, claims@recoverycorp.com

☐ Service information continued on attached page

**2**.  **SERVED BY UNITED STATES MAIL**: On (*date*) ___05/23/2017____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
None.

☐ Service information continued on attached page

**3**.  **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) ___05/23/2017____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
Hon. Martin Barash, 21041 Burbank Blvd., Room 303, Woodland Hills, CA 91367

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 05/23/2017 | Henry D. Paloci III | /s/ Henry D. Paloci III |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*December 2012*    Page 2