HENRY D. PALOCI III (California State Bar No. 268970)
hpaloci@hotmail.com
Henry D. Paloci III PA
5210 Lewis Road #5
Agoura Hills, CA 91301
Telephone: 805.498.5500
Facsimile: 866.565.6345
Attorneys for Creditor TROJAN CAPITAL INVESTMENTS LLC

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In Re: | Case No. 1:16-bk-11729-MB |
| TOMER FRIDMAN, | Chapter: 11 |
| Debtor(s). | **NOTICE OF MOTION AND MOTION TO DISMISS CASE PURSUANT TO 11 USC 1112(b)** |
| | **Hearing Set:** |
| | **Date:     September 5, 2017**<br>**Time:    1:30 PM**<br>**Courtroom: 303**<br>**Place:  21041 Burbank Blvd.**<br>  **Woodland Hills, California** |

**TO THE HONORABLE MARTIN BARASH, UNITED STATES BANKRUPTCY JUDGE AND ALL PARTIES:**

**PLEASE TAKE NOTICE** that a hearing will be held on September 5, 2017, at 1:30 p.m., before the Honorable MARTIN BARASH, United States Bankruptcy Judge (the "Court"), at the above-referenced location for the Court to consider the Motion to Dismiss Pursuant to 11 USC 1112(b) filed August 11, 2017 by Trojan Capital Investments LLC (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that any party wishing to obtain copies of the Motion should contact counsel for the Movant at the address set forth in the upper left-hand corner of this Notice. Copies of the Motion were sent to the aforementioned parties concurrently with this Notice as indicated on the proof of service attached hereto.

**PLEASE TAKE FURTHER NOTICE** that any party who wishes to assert an objection to confirmation of the Plan must file a timely written objection with the Clerk of the Bankruptcy Court fourteen (14) days before the hearing date and serve such objection on counsel for the Movant, whose name, address, and fax number appear at the top, left-hand corner of the first page of this Notice.

**PLEASE TAKE FURTHER NOTICE** that the failure to file and serve a timely opposition to Court approval of the Motion may be deemed by the Court to constitute consent to Court approval of the Motion.

Dated: August 11, 2017                    TROJAN CAPITAL INVESTMENT LLC


                                          By:___*/s/ Henry D. Paloci, III*_____
                                             HENRY D. PALOCI, III
                                             Attorneys for the Movant

## <u>MOTION TO DISMISS</u>

**COMES NOW** TROJAN CAPITAL INVESTMENT LLC, a creditor in this action (hereinafter "Trojan"), through undersigned counsel, and moves this Court for entry of an Order dismissing this case, or, alternatively, converting this case to one under Chapter 7 of the Code, and in support thereof submits as follows.

<u>Summary</u>

This Debtor has shown himself over eight months to be wholly incapable of following most, if not all, of the rules, requirements, and expectations of a Chapter 11 debtor, and his failure to meet his fiduciary and other obligations have caused harm to Trojan and other creditors. This case has been a mess since its filing, and it should be dismissed or converted as soon as possible so that creditors do not suffer further harm due to the mismanagement of the bankruptcy estate and its assets.

Debtor originally filed this case pro se under Chapter 13 of the Code on June 9, 2016. He listed this Creditor in his schedules but omitted most other creditors. The filing was brazen and transparent (perhaps the only part of this case that has been transparent) in that, clearly, the sole purpose of the case filing was to thwart Trojan's foreclosure. He did, however, disclose at least $2 million in secured debt, which disqualified him from Chapter 13 relief. This case was filed in bad faith in the first place.

The case should have dismissed last summer, but the Debtor held on, retained counsel, and converted the case to one under Chapter 11 on December 20, 2016.

Since this case was filed, the Debtor amended his budget schedules to show zero income. *See,* Docket Entry No. 71. On April 20, 2017, he amended his budget schedules again to show income of $49938.77 monthly and expenses of $21593.61 monthly. *See,* Docket Entry No. 115. However, we have no documentation at all of that income, and it doesn't appear that the Debtor actually earns that much money at present. If the Debtor is earning $49938.77 monthly, we can't see it in the record. The case is utterly lacking in transparency.

To make matters worse, Debtor is not using his DIP account(s) at all. We have no idea how or whether the debtor is consuming or depleting assets of the estate as he has ignored the most basic reporting requirements. Debtor has amended his monthly operating reports (which will be discussed in more detail below), but the detail merely serves to underscore the fact that the Debtor has mismanaged his assets and income postpetition (and post conversion).

We now know that the Debtor has at least one employee and should have payroll and tax DIP accounts in addition to his general DIP account. Not that it matters: the Debtor doesn't use his general DIP account anyway.

Since conducting a Rule 2004 examination (which is incomplete; many questions remain), Trojan has also learned that the Debtor has paid significant sums to insiders (his parents) both prepetition and postpetition. Trojan has also learned that the Debtor has not paid the senior lienholder on his primary residence at all since the case was filed. As rehabilitating the debt attendant to that property is ostensibly a primary reason for the Debtor's attempt at reorganization, the failure to pay that secured debt postpetition suggests that the Debtor is either unable to afford even the most basic and essential elements of his Plan – were he to have a Plan.

The Debtor has not yet filed a plan or disclosure statement eight months into Chapter 11 proceedings.

The Debtor also grossly misled the Court in certain budget disclosures in the course of requesting use of cash collateral and in providing a status report in May 2017 at the Court's direction.

There is cause to dismiss the case under Section 1112(b)(4)(A), (B), (E), and (F). Debtor is diminishing the assets of the Estate and has grossly mismanaged the Estate, and has failed to maintain basic reporting requirements.

One thing we do know is that the debtor, who claims to clear about $20,000 monthly from his work as a realtor, is not using any of that money to pay either lienholder encumbering his primary residence.

Renewed Motion

Trojan filed this motion once before. It was denied for improper service. Since filing the original motion, new facts have emerged that justify dismissal. In addition, the same old problems of inadequate disclosure and mismanagement of estate funds appear to remain.

Grounds

Debtor has mismanaged the bankruptcy estate, diminished its assets, and/or has failed to complete with orders of this Court, in the following ways.

1. DIP Accounts: In Trojan's first motion to dismiss, Trojan argued that the Debtor's failure to use his DIP account alone is grounds for dismissal. Nothing has changed. The Debtor opened a DIP bank account and deposited $58.82 into it upon conversion in December 2016; since then, the Debtor has only made one other transaction through the entire seven months of the case affecting the DIP account[1], a deposit of $15457.50 in June 2017. To be blunt, this is shameful and ridiculous. Not only is the Debtor not using the DIP account he has, but the Debtor should probably also have DIP accounts to sequester payroll[2] and tax deposits. It is not clear why the Debtor has not done so. As suggested by the bank statements of Debtor's business, the Debtor surely received and spent more than $58.82 between December 2016 and May 2017. The Court and parties in interest are entitled to full, line-item disclosure of each expense of the Estate and each deposit. Debtor has willfully declined to use his DIP account to the detriment of all other parties. It is a violation of rules applicable to Chapter 11 debtors to open debtor in possession bank accounts and then simply not use them.

2. Monthly Operating Reports: The Debtor first filed what were essentially blank MORs. *See,* Docket Entry Nos. 78, 79, 94, and 96. After Trojan's first motion to dismiss was

---

[1] Except for monthly bank fees.

[2] We learned at a recent hearing that the Debtor has at least one employee. Debtor's counsel represented in Court that the Debtor would open additional DIP accounts but we see no record of new accounts.

heard, and upon discussion of the matter in open court, the Debtor amended his first five MORs and has finally come into compliance by filing the MORs timely – at least through June 2017. The amended MORs contain financial information about the Debtor's corporate alter ego, White City 26 Inc., which is appropriate because the Debtor admitted in open court that the White City 26 Inc. is the Debtor's alter ego and all assets of White City 26 Inc. are actually assets of the estate.

The MORs remain problematic. For example, in MOR #1 we see a bank statement for a personal account ending in xx0165. This account is open at the end of the term. We don't see the account or its statements again, and we don't ever see proof that it closed.

More significantly, MOR #1 shows $13075.49 in corporate income and $12166.71 in corporate expenses. Docket Entry No. 190, p.4. On the bank statement attached, White City 26 Inc.'s bank statement, attached to MOR #1, shows $49938.77 in income and $49750.39 in expenses. There is no explanation.

Most troubling of all, the MORs reflect that all personal and business expenses (that we know of) go through the White City 26 Inc. corporate account – from conversion through June 2017, the last reporting period. Through all transactions are now disclosed, the Debtor's cash flow and assets are hopelessly commingled between business and personal. Worse, Debtor has a great many checks written to cash with an explanation of simply "Office Expenses." Here is a list of such transactions just since conversion[1]:

Check #2013   12/23/2016   Cash Outside Services $1850.00 MOR #1, DE#190, p.5

Check #2016   12/29/2016   Cash Reimbursement $170.00 Id.

Check #1010   2/10/2017   Cash Office Expenses $725.00 MOR #6, DE#204, p.5

---

[1] Debtor have himself round numbered amounts of cash in the months pre-conversion and post-petition as well (he did this for the entire period for which bank statements are available). Trojan cannot infer that these amounts are for reimbursements of expenses because there are no receipts known to Trojan and because it seems implausible that the reimbursements are always for round numbers.

Check #1012   2/17/2017  Cash Office Expenses $530.00 Id. at 6.

Check #2101   2/27/2017  Cash Office Expenses $850.00 Id. at 7.

Check #2104   3/3/2017  Cash Office Expenses $420.00 MOR #4, DE#205, p.5

Check #2107  3/10/2017  Cash Office Expenses $350.00 Id.

Check #2109   3/17/2017  Cash Office Expenses $400.00 Id. at 6.

Check #2112   3/24/2017  [no payee] Miscellaneous   $570.00  Id. at 6.

Check #2113   4/4//2017  Cash Office Expenses $450.00 MOR #5, DE#206, p.5

Check #2120  4/24/2017  Cash Office Expenses $570.00  Id. at 7.

Check #2127   4/28/2017  Cash Office Expenses $380.00 Id. at 7.

Check #2135   5/11/2017  Cash Office Expenses $400.00 MOR #6, DE#207, p.6

Check #2139   5/19/2017  Cash Office Expenses $550.00  Id.

Check #2142   5/26/2017  Cash Office Expenses $380.00  Id. at 7.

Check #2145  6/1/2017     Cash  Office Expenses $570.00 MOR #7, DE#219, p.5.

Check #2152  6/16/2017  Cash  Office Expenses $960.00  Id. at 6.

This is a total of $10125 in unexplained cash withdrawals post-confirmation. If the Court is going to allow this case to continue, (1) unexplained withdrawals must cease, and (2) these "expenses" must be documented, or the money needs to be returned to the bankruptcy estate.

Trojan took issue with failure to disclose income and failure to use the DIP account(s) in the first place; now that the Debtor has disclosed an accounting of the corporate alter ego, Trojan takes issue with the contents of the reporting. Relative to the size of the bankruptcy estate, a stunning amount of money is missing or misappropriated. And this discussion doesn't even reach the matter of withdrawing and redepositing funds; see Section 4, below.

3.  <u>Alter Ego</u>: At the initial hearing on use of cash collateral, the Debtor testified in open court that the assets of his corporate alter ego, White City 26 Inc., were really his personal property and thus property of the estate. By extension, all income and expenses of the

alter ego are income and expenses of the Estate. As shown in the bank statements of White City 26 Inc. attached to the MORs, the Debtor commingles his own funds with that of White City 26 Inc. and has, for the entire time this case has been open, used the White City 26 Inc. account for ALL banking, business and personal, while evading reporting requirements by not using his DIP account. This constitutes mismanagement and is grounds for dismissal. One might think that this grounds for dismissal is merely technical, but it isn't: the Debtor's lack of transparency has made it incredibly difficult to distinguish business expenses from personal, and proper use of estate funds from improper use of estate funds. This case exemplifies why we use debtor in possession bank accounts and have monthly operating reports, and why they are necessary.

4.  Holding and Redepositing Estate Funds: The Debtor testified in open court in this case as to his practice of withdrawing large sums of money from his bank account in the form of cashier's checks back to his own corporation (he receives intermittent large commissions as a realtor), keeping those checks undeposited and under his own control, and then redepositing them as needed. The Court chastised the Debtor as to this practice: it evades transparency, and constitutes mismanagement of estate funds.

Trojan audited the bank statements of White City 26 Inc. from April 2015 to the present and found this practice or redepositing the Debtor's own income to his own account to have taken place throughout this period – basically any and every time the Debtor has had sufficient cash on hand to justify[1]. Evidence of this practice can be found at Exhibit 1 hereto, a $60000 cancelled check dated March 10, 2016 (just before the date of filing) written to "cash" with a note on the memo like "cashier cks for White City."

---

[1] While Debtor might argue that he has ceased the practice, it is probably more accurate to say, judging by recent MORs, that the Debtor simply hasn't earned any meaningful commissions that would justify withdrawal of large sums.

The Debtor readily admits to this management of his money[1], which conduct would be fine but for the fact that the Debtor is a Chapter 11 debtor.

This practice continued post-conversion. Trojan notes the following transactions affecting estate assets[2]:

| Date | Deposit | Withdrawal | Notes |
|------|---------|------------|-------|
| 2/21/2017 | $27663 | | Commission |
| 2/22/2017 | | $24000 | Checks |
| 4/4/2017 | $42518 | | Commission |
| 4/4/2017 | | $35000 | Checks |
| 4/14/2017 | $8580 | | Commission |
| 4/14/2017 | | $5000 | Checks |
| 4/20/2017 | $7352 | | Commission |
| 4/21/2017 | $20603 | | Commission |
| 4/21/2017 | | $23000 | Checks |

On the April 2017 MOR, these withdrawals are marked as "redeposited." Trojan's primary problem with this is that we have no idea when (or whether) these funds were redeposited – which is the reason why the Debtor isn't allowed to do this in the first place.

To be sure, Trojan believes that at least some of the money withdrawn in this fashion is returned to the account. A review of the bank statements of White City 26 Inc.

---

[1] He testified that he fears bank fraud.

[2] Notably, the Debtor had this same practice prepetition. It is highly likely that estate assets were in the control of the Debtor on the date of filing (or conversion) in the form of cashier's checks payable to White City 26 Inc. We have no idea how much, though; it would take great expense to learn without the assistance of the Debtor.

show a trickle of small deposits, between $1500 and $10000, throughout 2017 (and before).

Trojan's attorney reviewed all of the bank statements from April 2015 to present and the MORs and submits that it would be impossible with the information provided to tell if all money removed from the bankruptcy estate has been returned. There is no explanation and no accounting of the withdrawn funds. The funds leave the account in a large sum and return (when they do return) in a trickle. Trojan submits that estate funds are missing in an amount to be determined. This practice of keeping cash on hand (in the form of cashier's checks) and then redepositing it constitutes mismanagement of estate funds both in principle and in practice: the Debtor should not be doing this in the first place, but if he were he must have an accounting of all funds withdrawn and redeposited. He does not.

5.  Income Exaggerated: The Debtor doesn't have as much income as he says that he does, and at least at this point Trojan submits that it would be impossible for the Debtor to propose a feasible plan or reorganization that would include a $10,000 monthly payment to the senior lienholder on his primary residence.

Armed with the knowledge that the Debtor withdraws cash and then redeposits it in the form of cashier's checks as needed, the Debtor's income looks to be inflated. Debtor swore under oath (twice) that his business gross income for the first quarter of 2017 was $96779.24 and his net income was $60973.04. Docket Entry No. 148, p.28; Docket Entry No. 193, p.17; Exhibit 2, attached. This matches with the cash deposits shown on the White City 26 Inc.

However, close scrutiny of the bank statements of White City 26 Inc. shows that as much as half of the Debtor's stated income is actually previous income that was withdrawn and redeposited. This chart is a summary of certain withdrawals and deposits into the White City 26 Inc. checking account:

| Date | Deposit | Withdrawal | Redeposit |
|------|---------|------------|-----------|
| 1/3/2017 | | | 2000 |
| 1/30/2017 | | | 3000 |
| 2/7/2017 | 17302 | | |
| 2/7/2017 | | 15000 | |
| 2/10/2017 | | | 5000 |
| 2/14/2017 | | | 2500 |
| 2/16/2017 | | | 3500 |
| 2/21/2017 | 27663 | | |
| 2/22/2017 | | 24000 | |
| 2/23/2017 | | | 5000 |
| 2/24/2017 | | | 3000 |
| 2/27/2017 | | | 2000 |
| 2/28/2017 | | | 1000 |
| 3/2/2017 | | | 2000 |
| 3/6/2017 | | | 1000 |
| 3/13/2017 | | | |

Post-conversion, the Debtor continued his pattern of withdrawing and redepositing income. Assuming that all of the small deposits are income, then as much as half of the income stated isn't income at all[1].

Alternatively, we could conclude from these facts that the Debtor's income is as stated in the Debtor's pleadings and the cash withdrawals are simply money that has disappeared. Given the testimony and forensic evidence, this seems less likely.

This pattern continued into April and May 2017. Here is a similar chart for those months:

| Date | Deposit | Withdrawal | Redeposit |
|------|---------|------------|-----------|
| 4/4/2017 | 42518 | | |
| 4/4/2017 | | 35000 | |
| 4/7/2017 | | | 1000 |
| 4/11/2017 | | | 10000 |
| 4/14/2017 | 8580 | | |
| 4/14/2017 | | 5000 | |
| 4/20/2017 | 7352 | | |

---

[1] It is worth noting that this snapshot doesn't account for what happened before or after 1Q17. Deposits made before the 2/7/17 deposit/withdrawal appear to be redeposits from a prior deposit/withdrawal process. But again, without a complete accounting, it is incredibly difficult to say with certainty.

| 4/21/2017 | 20603 | |
| 4/21/2017 | | 23000 |
| 4/26/2017 | | 4600 |
| 4/26/2017 | | 4600 |
| 4/28/2017 | | 4600 |
| 5/2/2017 | | 4600 |
| 5/5/2017 | | 5000 |
| 5/8/2017 | | 4600 |
| 5/15/2017 | | 3500 |
| 5/15/2017 | | 3000 |
| 5/17/2017 | | 4920 |
| 5/18/2017 | | 5000 |
| 5/22/2017 | | 3000 |
| 5/23/2017 | | 1500 |
| 5/25/2017 | | 3000 |
| 5/26/2017 | | 4000 |

Again, the Debtor's income is substantially less than $116,055.95 for April 2017, the gross shown on the Debtor's projection income, Docket Entry No. 167, p.22; Exhibit 3 hereto.

If the Debtor's net income is half of what is stated for the first three months of 2017then his income is $10,000 monthly, which is about the amount of the payment due the homestead senior lienholder. Notably, the Debtor hasn't paid Chase, the senior lienholder on his primary residence, any payments at all post petition. If the Debtor were able to pay these payments and was simply accumulating the money, then Trojan submits that we would see at least $100,000 accrued in the DIP account. Through the May 2017 MOR, the Debtor had just over $3,000 cash on hand and isn't even paying his mortgage. The Debtor appears to have no chance to propose a feasible plan[1].

The Debtor has either lied on multiple sworn statements and schedules as to his finances, or he doesn't have any idea how much money he has or makes. Neither scenario

---

[1] The White City 26 Inc. bank statement attached to Debtor's MOR #7 shows no income at all outside of these small redeposits. Trojan submits that the Debtor has no income at all right now, which is also grounds for dismissal.

fits a successful Chapter 11 debtor, and the mismanagement and failure to adequately

disclose are grounds for dismissal.

6.   <u>Payments to Insiders</u>: In addition to overstating income, the Debtor has, according to

White City 26 Inc. cancelled checks, disbursed estate funds both prepetition and

postpetition to insiders[1]. The following transactions are objectionable:

Check #2108 1/26/2016 $5250.00 to Gideon Fridman[2]

Check #1850 12/30/2015 $6000.00 to Gideon Fridman

Check #1925 5/9/2016 $10000.00 to Gideon Fridman

Check #1972 9/26/2016 $5000.00 to Gideon Fridman

Check #2037 10/5/2016 $10000.00 to Gideon Fridman

These cancelled checks are attached hereto collectively as Exhibit 4.

Check #2108 3/3/2017 $2000.00 to Isidora Fridman[3] or Casa Group

Check #1007 2/6/2017 $1000.00 to Isidora Fridman

$15000 of the transfers to Gideon Fridman are postpetition and $21250 of the

transfers are prepetition but well within the period in which the funds could be subject to

clawback. These are estate funds. Whether these funds are a gift, a conveyance, or a loan

repayment, the Court should require these funds to be returned to the bankruptcy estate if

---

[1] The Debtor has also paid his mother Isidora Fridman, or Casa Group Inc., her alter ego. But the Debtor is in

business with his mother as a realtor and it is less clear cut that these transactions are fraudulent. We lack for

accounting as to the arrangement between the Debtor and his motion, and would want further disclosures

preconfirmation, but Trojan is not prepared to say that conveyances to the Debtor's mother constitute

mismanagement of estate assets.

[2] Gideon Fridman is Tomer Fridman's father and thus an insider to the Debtor.

[3] Mother of the Debtor.

the Court allows the case to continue. Alternatively, payment of $36250 to the Debtor's father constitutes mismanagement of the estate and is grounds for dismissal.

      The transfers to Isidora Fridman are unknown in nature.

7. <u>Payments to Unapproved Professionals</u>: In addition, the Debtor has paid the following professionals postpetition without leave of Court:

    a. Emmanuel Rubin, appraiser, $1950. Two checks are attached hereto as Exhibit 5.

    b. Martin Weingarten, attorney, $800. Debtor made three payments post petition ($800 total) which appear to be for court appearances.

    c.  William Brownstein, attorney, $28000; *see* Docket Entry No. 230, p.2, line 16. Mr. Brownstein has an approved employment application, but Trojan is given to understand that the enabling order did not authorize direct payment postpetition from the Debtor. White City 26 Inc. is the Debtor's alter ego, and this is impermissible.

    d. Sanjay Sachdeva, purported to have prepared the amended MORs; payments unknown.

    e. IBC Law Firm, $500, May 2017; *See* MOR #6, Docket Entry No. 207, p.6.

8. <u>Expenses Inappropriate for Debtor</u>: The Debtor has also mismanaged estate funds by spending them post-petition and pre-conversion (from the White City 26 Inc. checking account) on the following:

      $9477 on 8/8/16 to It's a Trip Travel, ostensibly for business development (Ex.6)

      $2480 on 11/7/16 to Montessori of Calabasas (Debtor has no children)

      $2480 on 10/11/16 to Montessori of Calabasas (Debtor has no children)

      $2060 on 9/17/16 to Montessori of Calabasas (Debtor has no children)

      $2500 on 6/27/16 to Viewpoint School (again, Debtor has no children)

A Debtor should not spend $9477 on a trip and $9520 on school tuition for someone else's children and at the same time ask creditors to sit parked in Chapter 11 for a year and then offer less than full satisfaction. This Debtor has operated as though he is not in bankruptcy at all, to the detriment of Trojan and other creditors. Use of estate funds on a

$9000 trip and school tuition for somebody else's kids is mismanagement and grounds for dismissal.

9. <u>Bad Faith Filing</u>: As stated above, the Debtor initially filed this case in Chapter 13 even though, in the face of the petition and schedules, the Debtor was not qualified to be a Chapter 13 debtor. The filing was endeavored for the sole purpose of thwarting Trojan's foreclosure.

10. <u>Senior Lienholder Unpaid</u>: Debtor testified at his Rule 2004 examination that the bank statements provided would show any payments made to the Senior Lienholder. There are none. Trojan submits that the Debtor isn't paying the senior lienholder at all post petition. Reorganizing debt to retain his home is purported to be the sole (or substantial) reason for this filing. If the Debtor isn't paying the creditors secured by the property he seems to want to keep, then there is no point in this case remaining in Chapter 11.

11. No Plan or Disclosure Statement: The Debtor has not filed a plan or disclosure statement. As of this writing nearly 8 months have passed since conversion to Chapter 11. The Debtor has not meaningfully advanced the case.

<u>Conclusion</u>

In summary, if there is a rule or requirement for a Chapter 11 debtor, this Debtor has probably broken or ignored it. Debtors must fulfill basic disclosure requirements in order to be afforded to opportunity for relief under Chapter 11 of the Code. This Debtor has not done that, and has shown no propensity or ability to do so. His case should be dismissed or converted.

In summary, if the Court allows this Debtor to continue as a debtor in possession under Chapter 11 of the Code, then the Debtor should be required to account for all of the following and/or return these funds to the bankruptcy estate:

A. Section 2: $10,125 in unexplained cash withdrawals for "expenses" of White City 26 Inc.

B. Section 4: $87,000 of cash withdrawals from White City 26 Inc., purported to be cashier's checks that were later returned to the White City 26 Inc. account as needed.

C.  Section 4: an unknown amount of pre-petition cash withdrawals from White City 26 Inc., purported to be cashier's checks that were later returned to the White City 26 Inc. account as needed. An accounting of all such withdrawals and redeposits going back at least one year from the date of filing should be required.

D.  Section 4: an unknown amount of pre-conversion (post-petition) cash withdrawals from White City 26 Inc., purported to be cashier's checks that were later returned to the White City 26 Inc. account as needed. An accounting of all such withdrawals and redeposits going back at least one year from the date of filing should be required.

E.  Section 6: $36250 in transfers to Gideon Fridman, the Debtor's father, just before and just after the date of filing.

F.  Section 6: $3000 in transfers to Isidora Fridman, the Debtor's mother, post-conversion.

G.  Section 7: $1950 in transfers to Emmanuel Rubin, appraiser of Debtor's primary residence, post-conversion.

H.  Section 7: $800 in payments to Martin Weingarten, attorney during the Chapter 13 portion of the case, made post-filing but pre-conversion.

I.  Section 7: $28,000 in transfers from White City 26 Inc. to William Brownstein, post-conversion.

J.  Section 7: transfers, if any, to Sanjay Sachdeva, purported to have prepared the amended MORs, post-conversion.

K.  Section 7: $500 paid to IBC Law Firm, post-conversion.

L.  Section 8: $9477 paid to It's a Trip for "business development" post-filing but pre-conversion.

M.  Section 8: $9520 in school tuition paid by the Debtor for children that aren't his, post-filing but pre- conversion.

TOTAL KNOWN MISMANAGED FUNDS:  $ 186,622

Trojan submits that this is not possible and that the Debtor has shown himself to be simply not capable of being a proper debtor in possession.

**WHEREFORE**, Creditor respectfully requests that this Court enter an Order dismissing this case, or converting it to one under Chapter 7 in the alternative, and for such other relief as this Court may deem just and proper.

Dated:  August 11, 2017                TROJAN CAPITAL INVESTMENTS LLC

                                       By:____/s/ Henry D. Paloci III_____
                                       HENRY D. PALOCI, III
                                       Attorney for the Creditor

HENRY D. PALOCI III (California State Bar No. 268970)
hpaloci@hotmail.com
Henry D. Paloci III PA
5210 Lewis Road #5
Agoura Hills, CA 91301
Telephone:  805.498.5500
Facsimile:  866.565.6345
Attorneys for Creditor TROJAN CAPITAL INVESTMENT LLC

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In Re: | Case No. 1:16-bk-11729-MB |
| TOMER FRIDMAN, | Chapter:    11 |
| Debtor(s). | **DECLARATION OF HENRY D. PALOCI III IN SUPPORT OF MOTION TO DISMISS** |

## DECLARATION OF HENRY D. PALOCI III

Henry D. Paloci III, hereby declares as follows:

1.   I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.   I am attorney licensed to practice before this Court and in the federal and bankruptcy courts of the Southern, Eastern, Northern, and Central Districts of California, and in the Middle and Southern Districts of Florida.

3.   I have reviewed this case, as filed, in its entirety. I make these statements based upon that review.

4.   On or about June 6, 2017, I examined the Debtor pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure. At that time, I asked the debtor if he had paid the senior lienholder encumbering the Prado de las Peras property (the collateral of the Movant in

this Motion, hereinafter the "Senior Lienholder"). He was cagey in his answer and suggested that he did not know for certain. I then asked the Debtor if any payment made by him to the Senior Lienholder would appear on the bank statements for White City 26 Inc. that he provided in connection with the examination. He said that the bank statements provided would indeed show any payments made to the Senior Lienholder.

5.   I examined all of the bank statements provided by the Debtor from June 2016 through May 2017 and I found no payments at all to the Senior Lienholder encumbering the property upon which Movant holds a junior lien and which is the subject of this Motion. Nothing in any of the monthly operating reports filed by the Debtor contradicts the Debtor's statement and my finding, from examining the Debtor's records, that the Debtor has not paid the Senior Lienholder at all post petition. Together, this all confirmed my suspicions, and that of my client, that the Senior Lienholder wasn't being paid.

6.   Debtor originally filed this case pro se under Chapter 13 of the Code on June 9, 2016. He listed this Creditor in his schedules but omitted most other creditors, the sole purpose of the case being to thwart this Creditor's foreclosure. He did, however, disclose at least $2 million in secured debt, which disqualified him from Chapter 13 relief.

7.   The case should have dismissed last summer, but the Debtor held on, retained counsel, and converted the case to one under Chapter 11 on December 20, 2016.

8.   The Debtor has been ordered to remain in compliance with the disclosure requirements of the United States Trustee, and has not remotely done so. In Trojan's first motion to dismiss, Trojan argued that the Debtor's failure to use his DIP account alone is grounds for dismissal. Nothing has changed. The Debtor opened a DIP bank account and deposited $58.82 into it upon conversion in December 2016; since then, the Debtor has only made one other transaction through the entire seven months of the case affecting the DIP account[1], a deposit of $15457.50 in June 2017.

9.   The Debtor first filed what were essentially blank MORs. *See,* Docket Entry Nos. 78, 79, 94, and 96. After Trojan's first motion to dismiss was heard, and upon discussion of the matter in open court, the Debtor amended his first five MORs and has finally come into

---

[1] Except for monthly bank fees.

compliance by filing the MORs timely – at least for June 2017. The amended MORs contain financial information about the Debtor's corporate alter ego, White City 26 Inc.

10. The MORs remain problematic. For example, in MOR #1 we see a bank statement for a personal account ending in xx0165. This account is open at the end of the term. We don't see the account or its statements again, and we don't ever see proof that it closed.

11. MOR #1 shows $13075.49 in corporate income and $12166.71 in corporate expenses. Docket Entry No. 190, p.4. On the bank statement attached, White City 26 Inc.'s bank statement, attached to MOR #1, shows $49938.77 in income and $49750.39 in expenses. There is no explanation.

12.    Most troubling of all, the MORs reflect that all personal and business expenses (that we know of) go through the White City 26 Inc. corporate account – from conversion through June 2017, the last reporting period. Through all transactions are now disclosed, the Debtor's cash flow and assets are hopelessly commingled between business and personal. Worse, Debtor has a great many checks written to cash with an explanation of simply "Office Expenses." Here is a list of such transactions just since conversion[1]:

Check #2013   12/23/2016  Cash Outside Services $1850.00 MOR #1, DE#190, p.5
Check #2016   12/29/2016  Cash Reimbursement $170.00 Id.
Check #1010   2/10/2017  Cash Office Expenses $725.00 MOR #6, DE#204, p.5
Check #1012   2/17/2017  Cash Office Expenses $530.00 Id. at 6.
Check #2101   2/27/2017  Cash Office Expenses $850.00 Id. at 7.
Check #2104   3/3/2017  Cash Office Expenses $420.00 MOR #4, DE#205, p.5
Check #2107   3/10/2017  Cash Office Expenses $350.00 Id.
Check #2109   3/17/2017  Cash Office Expenses $400.00 Id. at 6.
Check #2112   3/24/2017  [no payee] Miscellaneous  $570.00  Id. at 6.
Check #2113   4/4//2017  Cash Office Expenses $450.00 MOR #5, DE#206, p.5
Check #2120   4/24/2017  Cash Office Expenses $570.00  Id. at 7.
Check #2127   4/28/2017  Cash Office Expenses $380.00 Id. at 7.
Check #2135   5/11/2017  Cash Office Expenses $400.00 MOR #6, DE#207, p.6
Check #2139   5/19/2017  Cash Office Expenses $550.00  Id.

---

[1] Debtor have himself round numbered amounts of cash in the months pre-conversion and post-petition as well (he did this for the entire period for which bank statements are available). Trojan cannot infer that these amounts are for reimbursements of expenses because there are no receipts known to Trojan and because it seems implausible that the reimbursements are always for round numbers.

Check #2142   5/26/2017  Cash Office Expenses $380.00  Id. at 7.
Check #2145  6/1/2017     Cash  Office Expenses $570.00 MOR #7, DE#219, p.5.
Check #2152  6/16/2017  Cash  Office Expenses $960.00  Id. at 6.

13. At the initial hearing on use of cash collateral, the Debtor testified in open court that the assets of his corporate alter ego, White City 26 Inc., were really his personal property and thus property of the estate. By extension, all income and expenses of the alter ego are income and expenses of the Estate. As shown in the bank statements of White City 26 Inc. attached to the MORs, the Debtor commingles his own funds with that of White City 26 Inc. and has, for the entire time this case has been open, used the White City 26 Inc. account for ALL banking, business and personal, while evading reporting requirements by not using his DIP account. This constitutes mismanagement and is grounds for dismissal. One might think that this grounds for dismissal is merely technical, but it isn't: the Debtor's lack of transparency has made it incredibly difficult to distinguish business expenses from personal, and proper use of estate funds from improper use of estate funds.

14. The Debtor testified in open court in this case as to his practice of withdrawing large sums of money from his bank account in the form of cashier's checks back to his own corporation (he receives intermittent large commissions as a realtor), keeping those checks undeposited and under his own control, and then redepositing them as needed. The Court chastised the Debtor as to this practice: it evades transparency, and constitutes mismanagement of estate funds.

15. I audited the bank statements of White City 26 Inc. from April 2015 to the present and found this practice or redepositing the Debtor's own income to his own account to have taken place throughout this period – basically any and every time the Debtor has had

sufficient cash on hand to justify[1]. Evidence of this practice can be found at Exhibit 1 hereto, a $60000 cancelled check dated March 10, 2016 (just before the date of filing) written to "cash" with a note on the memo like "cashier cks for White City." The Debtor readily admits to this management of his money[2].

This practice continued post-conversion. I noted the following transactions affecting estate assets[3] post conversion:

| Date | Deposit | Withdrawal | Notes |
|---|---|---|---|
| 2/21/2017 | $27663 | | Commission |
| 2/22/2017 | | $24000 | Checks |
| 4/4/2017 | $42518 | | Commission |
| 4/4/2017 | | $35000 | Checks |
| 4/14/2017 | $8580 | | Commission |
| 4/14/2017 | | $5000 | Checks |
| 4/20/2017 | $7352 | | Commission |
| 4/21/2017 | $20603 | | Commission |
| 4/21/2017 | | $23000 | Checks |

---

[1] While Debtor might argue that he has ceased the practice, it is probably more accurate to say, judging by recent MORs, that the Debtor simply hasn't earned any meaningful commissions that would justify withdrawal of large sums.

[2] He testified that he fears bank fraud.

[3] Notably, the Debtor had this same practice prepetition. It is highly likely that estate assets were in the control of the Debtor on the date of filing (or conversion) in the form of cashier's checks payable to White City 26 Inc. We have no idea how much, though; it would take great expense to learn without the assistance of the Debtor.

On the April 2017 MOR, these withdrawals are marked as "redeposited." A review of the bank statements of White City 26 Inc. show a trickle of small deposits, between $1500 and $10000, throughout 2017 (and before).

16. I reviewed all of the bank statements of White City 26 Inc. from April 2015 to present and the MORs. It would be it impossible with the information provided to tell if all money removed from the bankruptcy estate has been returned. There is no explanation and no accounting of the withdrawn funds. The funds leave the account in a large sum and return (when they do return) in a trickle.

17. Armed with the knowledge that the Debtor withdraws cash and then redeposits it in the form of cashier's checks as needed, I concluded and argue now that the Debtor's income looks to be inflated. Debtor swore under oath (twice) that his business gross income for the first quarter of 2017 was $96779.24 and his net income was $60973.04. Docket Entry No. 148, p.28; Docket Entry No. 193, p.17; Exhibit 2, attached. This matches with the cash deposits shown on the White City 26 Inc. However, close scrutiny of the bank statements of White City 26 Inc. shows that as much as half of the Debtor's stated income is actually previous income that was withdrawn and redeposited. This chart is a summary of certain withdrawals and deposits into the White City 26 Inc. checking account:

18.

| Date | Deposit | Withdrawal | Redeposit |
|------|---------|------------|-----------|
| 1/3/2017 | | | 2000 |
| 1/30/2017 | | | 3000 |
| 2/7/2017 | 17302 | | |
| 2/7/2017 | | 15000 | |
| 2/10/2017 | | | 5000 |
| 2/14/2017 | | | 2500 |
| 2/16/2017 | | | 3500 |
| 2/21/2017 | 27663 | | |
| 2/22/2017 | | 24000 | |
| 2/23/2017 | | | 5000 |
| 2/24/2017 | | | 3000 |
| 2/27/2017 | | | 2000 |
| 2/28/2017 | | | 1000 |
| 3/2/2017 | | | 2000 |

| | | | |
|---|---|---|---|
| 3/6/2017 | | | 1000 |
| 3/13/2017 | | | |

19. Post-conversion, the Debtor continued his pattern of withdrawing and redepositing income. Assuming that all of the small deposits are income, then as much as half of the income stated isn't income at all[1].

20. This pattern continued into April and May 2017. Here is a similar chart for those months:

| Date | Deposit | Withdrawal | Redeposit |
|---|---|---|---|
| 4/4/2017 | 42518 | | |
| 4/4/2017 | | 35000 | |
| 4/7/2017 | | | 1000 |
| 4/11/2017 | | | 10000 |
| 4/14/2017 | 8580 | | |
| 4/14/2017 | | 5000 | |
| 4/20/2017 | 7352 | | |
| 4/21/2017 | 20603 | | |
| 4/21/2017 | | 23000 | |
| 4/26/2017 | | | 4600 |
| 4/26/2017 | | | 4600 |
| 4/28/2017 | | | 4600 |
| 5/2/2017 | | | 4600 |
| 5/5/2017 | | | 5000 |
| 5/8/2017 | | | 4600 |
| 5/15/2017 | | | 3500 |
| 5/15/2017 | | | 3000 |
| 5/17/2017 | | | 4920 |
| 5/18/2017 | | | 5000 |
| 5/22/2017 | | | 3000 |
| 5/23/2017 | | | 1500 |
| 5/25/2017 | | | 3000 |
| 5/26/2017 | | | 4000 |

21. In addition to overstating income, the Debtor has, according to White City 26 Inc. cancelled checks, disbursed estate funds both prepetition and postpetition to insiders[1]. I noted the following transactions to Gideon Fridman, who appears to be an insider:

---

[1] It is worth noting that this snapshot doesn't account for what happened before or after 1Q17. Deposits made before the 2/7/17 deposit/withdrawal appear to be redeposits from a prior deposit/withdrawal process. But again, without a complete accounting, it is incredibly difficult to say with certainty.

Check #2108 1/26/2016 $5250.00 to Gideon Fridman[2]
Check #1850 12/30/2015 $6000.00 to Gideon Fridman
Check #1925 5/9/2016 $10000.00 to Gideon Fridman
Check #1972 9/26/2016 $5000.00 to Gideon Fridman
Check #2037 10/5/2016 $10000.00 to Gideon Fridman

These cancelled checks are attached hereto collectively as Exhibit 4.

Check #2108 3/3/2017 $2000.00 to Isidora Fridman[3] or Casa Group
Check #1007 2/6/2017 $1000.00 to Isidora Fridman

$15000 of the transfers to Gideon Fridman are postpetition and $21250 of the transfers are prepetition but well within the period in which the funds could be subject to clawback. These are estate funds. Whether these funds are a gift, a conveyance, or a loan repayment, the Court should require these funds to be returned to the bankruptcy estate if the Court allows the case to continue. Alternatively, payment of $36250 to the Debtor's father constitutes mismanagement of the estate and is grounds for dismissal.

The transfers to Isidora Fridman are unknown in nature.

22. In addition, the Debtor has paid the following professionals postpetition without leave of Court:

Emmanuel Rubin, appraiser, $1950. Two checks are attached hereto as Exhibit 5.

Martin Weingarten, attorney, $800. Debtor made three payments which appear to be for court appearances.

---

[1] The Debtor has also paid his mother Isidora Fridman, or Casa Group Inc., her alter ego. But the Debtor is in business with his mother as a realtor and it is less clear cut that these transactions are fraudulent. We lack for accounting as to the arrangement between the Debtor and his motion, and would want further disclosures preconfirmation, but Trojan is not prepared to say that conveyances to the Debtor's mother constitute mismanagement of estate assets.

[2] Gideon Fridman is Tomer Fridman's father and thus an insider to the Debtor.

[3] Mother of the Debtor.

William Brownstein, attorney, $5000 on 2/24/2017. Mr. Brownstein has an approved employment application, but Trojan is given to understand that the enabling order did not authorize direct payment postpetition from the Debtor. White City 26 Inc. is the Debtor's alter ego, and this is impermissible.

23. The Debtor has also mismanaged estate funds post-petition and pre-conversion by spending them (from the White City 26 Inc. checking account) on the following:

$9477 on 8/8/16 to It's a Trip Travel, ostensibly for business development (Ex.6)

$2480 on 11/7/16 to Montessori of Calabasas (Debtor has no children)

$2480 on 10/11/16 to Montessori of Calabasas (Debtor has no children)

$2060 on 9/17/16 to Montessori of Calabasas (Debtor has no children)

$2500 on 6/27/16 to Viewpoint School (again, Debtor has no children)

24. As stated above, Debtor grossly understated his income when he filed amended schedules in December 2016 that showed zero income and zero expenses. *See,* Docket Entry No. 71, pp. 42-46. Ironically, he may have overstated his income in the same case: on April 20, 2017, he amended his budget schedules to show income of $49938.77 monthly and expenses of $21593.61 monthly. *See,* Docket Entry No. 115.  He may also own, hold, or control assets that are not scheduled or disclosed. We actually have no idea what the Debtor earns or what he has because his budget schedules have been amended twice and are not remotely compatible with the limited bank statements provided.  Cash flow, and its disclosure, is highly relevant to the terms of a future Chapter 11 plan that the Debtor might propose.

25. Based on the foregoing, I respectfully request that the Court enter an Order granting the Motion.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _11__th day of _____August_____, 2017 at ___Westlake Village_, California.


___/s/ Henry D. Paloci III_____
HENRY D. PALOCI III

# WELLS FARGO

## Check Details

| | |
|---|---|
| **Check Number** | 1908 |
| **Date Posted** | 03/10/16 |
| **Check Amount** | $60,000.00 |





## *Note

The account number, signature, and endorsement are removed from the image(s) for security reasons.
To obtain a full copy of the image, please call us at 1-800-TO-WELLS (1-800-869-3557), 24 hours, 7 days a week.

🏠 Equal Housing Lender

### Exhibit B-2
### White City 26 Inc
### Profit & Loss
#### January through March 2017

| | Jan - Mar 17 |
|---|---|
| **Ordinary Income/Expense** | |
| Income | |
| Commission Income | 96,779.24 |
| Total Income | 96,779.24 |
| | |
| **Gross Profit** | 96,779.24 |
| | |
| Expense | |
| Advertising and Promotion | 176.07 |
| Automobile Expense | 573.02 |
| Bank Service Charges | 329.04 |
| Dues and Subscriptions | 2,382.77 |
| Insurance Expense | 2,526.60 |
| Legal & Professional Fees | 5,000.00 |
| Meals and Entertainment | 5,721.02 |
| Office Supplies | 1,171.73 |
| Outside Services | 7,247.00 |
| Parking | 7.00 |
| Payroll Expenses | 50.00 |
| Payroll Taxes | 1,696.53 |
| Postage and Delivery | 25.88 |
| Printing and Reproduction | 2,857.17 |
| Storage | 1,022.48 |
| Telephone Expense | 198.94 |
| Utilities | 1,514.61 |
| Total Expense | 32,499.86 |
| | |
| **Net Ordinary Income** | 64,279.38 |
| | |
| Other Income/Expense | |
| Other Expense | |
| State Income Tax | 3,306.34 |
| Total Other Expense | 3,306.34 |
| | |
| **Net Other Income** | -3,306.34 |
| | |
| **Net Income** | 60,973.04 |

EXHIBIT "1"
23

Exhibit 2

Case 1:16-bk-11729-MB    Doc 167    Filed 06/06/17    Entered 06/06/17 15:59:21    Desc
Main Document       Page 22 of 34

Tomer Fridman

Case No. 1:16-bk-11729MB

Projected Income and Expenses from April 1, 2017 through November 30, 2017

| Description | April | May | June | July | August | September | October | November | 8 Months | Average |
|---|---|---|---|---|---|---|---|---|---|---|
| Receipts | $116,055.95 | $47,616.56 | $66,500.00 | $66,500.00 | $66,500.00 | $66,500.00 | $66,500.00 | $66,500.00 | $562,672.51 | $70,334.06 |
| Disbursements | | | | | | | | | | |
| Advertising & Promotion | $58.69 | $58.69 | $58.69 | $58.69 | $58.69 | $58.69 | $58.69 | $58.69 | $469.52 | $58.69 |
| Automobile gas and maintenance | $191.00 | $192.00 | $191.00 | $191.00 | $192.00 | $191.00 | $192.00 | $192.00 | $1,532.00 | $191.50 |
| Bank charges | $109.68 | $109.68 | $109.68 | $109.68 | $109.68 | $109.68 | $109.68 | $109.68 | $877.44 | $109.68 |
| Dues & Subscriptions | $1,094.25 | $1,094.26 | $1,094.25 | $1,094.25 | $1,094.26 | $1,094.25 | $1,094.26 | $1,094.26 | $8,754.04 | $1,094.26 |
| Insurance | $842.20 | $842.20 | $842.20 | $842.20 | $842.20 | $842.20 | $842.20 | $842.20 | $6,737.60 | $842.20 |
| Legal & Prof | $1,666.67 | $1,666.67 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $4,000.00 | $27,333.34 | $3,416.67 |
| Meals & Ent. | $1,907.00 | $1,907.01 | $1,907.00 | $1,907.00 | $1,907.01 | $1,907.00 | $1,907.01 | $1,907.01 | $15,256.04 | $1,907.01 |
| Office Supplies | $390.57 | $390.58 | $390.57 | $390.57 | $390.57 | $390.58 | $390.57 | $390.57 | $3,124.59 | $390.57 |
| Outside Services | $2,415.66 | $2,415.67 | $2,415.66 | $2,415.66 | $2,415.66 | $2,415.67 | $2,415.66 | $2,415.67 | $19,325.31 | $2,415.66 |
| Parking | $2.33 | $2.34 | $2.33 | $2.33 | $2.33 | $2.34 | $2.33 | $2.34 | $18.67 | $2.33 |
| Payroll expense | $16.66 | $16.67 | $16.66 | $16.66 | $16.66 | $16.67 | $16.66 | $16.67 | $133.31 | $16.66 |
| Payroll taxes | $565.44 | $565.45 | $565.44 | $565.44 | $565.44 | $565.45 | $565.44 | $565.45 | $4,523.55 | $565.44 |
| Postage & Delivery | $8.62 | $8.63 | $8.62 | $8.62 | $8.62 | $8.63 | $8.62 | $8.63 | $68.99 | $8.62 |
| Printing and copying | $952.39 | $952.39 | $952.39 | $952.39 | $952.39 | $952.39 | $952.39 | $952.39 | $7,619.12 | $952.39 |
| Storage | $340.83 | $340.82 | $340.83 | $340.83 | $340.83 | $340.82 | $340.83 | $340.82 | $2,726.61 | $340.83 |
| Telephone | $66.31 | $66.32 | $66.31 | $66.31 | $66.31 | $66.32 | $66.31 | $66.32 | $530.51 | $66.31 |
| Utilities | $504.87 | $504.87 | $504.87 | $504.87 | $504.87 | $504.87 | $504.87 | $504.87 | $4,038.96 | $504.87 |
| HOA | $334.00 | $334.00 | | | | | $334.00 | $334.00 | $1,336.00 | $167.00 |
| 1st T.D. Mtg | $10,091.85 | $10,091.85 | $10,091.85 | $10,091.85 | $10,091.85 | $10,091.85 | $10,091.85 | $10,091.85 | $80,734.80 | $10,091.85 |
| Housekeeper | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $600.00 | $4,800.00 | $600.00 |
| Gardener | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $2,000.00 | $250.00 |
| Pool man | $175.00 | $175.00 | $175.00 | $175.00 | $175.00 | $175.00 | $175.00 | $175.00 | $1,400.00 | $175.00 |

EXHIBIT "B"
Page 22

Exhibit 3

## WELLS FARGO

## Check Details

| | |
|---|---|
| Check Number | 1866 |
| Date Posted | 01/25/16 |
| Check Amount | $5,250.00 |



WHITE CITY 26, INC.

1866

Date 1/22/16

Pay To The Order of ___ Gideon Fridman ___ | $ 5,250 °⁰⁄₀₀

five thousand two hundred fifty Dollars

Wells Fargo Bank, N.A.
California
wellsfargo.com

For _____



7444151044

## *Note

The account number, signature, and endorsement are removed from the image(s) for security reasons. To obtain a full copy of the image, please call us at 1-800-TO-WELLS (1-800-869-3557), 24 hours, 7 days a week.

⌂ Equal Housing Lender

Exhibit 4

# WELLS FARGO

## Check Details

| | |
|---|---|
| **Check Number** | 1852 |
| **Date Posted** | 12/30/15 |
| **Check Amount** | $6,000.00 |





## *Note

The account number, signature, and endorsement are removed from the image(s) for security reasons.
To obtain a full copy of the image, please call us at 1-800-TO-WELLS (1-800-869-3557), 24 hours, 7 days a week.

⌂ Equal Housing Lender

# WELLS FARGO

## Check Details

| | |
|---|---|
| **Check Number** | 1925 |
| **Date Posted** | 05/09/16 |
| **Check Amount** | $10,000.00 |





## *Note

The account number, signature, and endorsement are removed from the image(s) for security reasons.
To obtain a full copy of the image, please call us at 1-800-TO-WELLS (1-800-869-3557), 24 hours, 7 days a week.

⌂ Equal Housing Lender

# WELLS FARGO

## Check Details

| | |
|---|---|
| **Check Number** | 1972 |
| **Date Posted** | 09/26/16 |
| **Check Amount** | $5,000.00 |





## *Note

The account number, signature, and endorsement are removed from the image(s) for security reasons.
To obtain a full copy of the image, please call us at 1-800-TO-WELLS (1-800-869-3557), 24 hours, 7 days a week.

⌂ Equal Housing Lender

# WELLS FARGO

## Check Details

| | |
|---|---|
| **Check Number** | 2037 |
| **Date Posted** | 10/05/16 |
| **Check Amount** | $10,000.00 |





## *Note

The account number, signature, and endorsement are removed from the image(s) for security reasons.
To obtain a full copy of the image, please call us at 1-800-TO-WELLS (1-800-869-3557), 24 hours, 7 days a
week.

⌂ Equal Housing Lender

# WELLS FARGO

## Check Details

| | |
|---|---|
| **Check Number** | 2137 |
| **Date Posted** | 05/16/17 |
| **Check Amount** | $1,400.00 |





## *Note

The account number, signature, and endorsement are removed from the image(s) for security reasons. To obtain a full copy of the image, please call us at 1-800-TO-WELLS (1-800-869-3557), 24 hours, 7 days a week.

⌂ Equal Housing Lender

Exhibit 5

# WELLS FARGO

## Check Details

| | |
|---|---|
| **Check Number** | 2028 |
| **Date Posted** | 08/24/16 |
| **Check Amount** | $550.00 |





## *Note

The account number, signature, and endorsement are removed from the image(s) for security reasons.
To obtain a full copy of the image, please call us at 1-800-TO-WELLS (1-800-869-3557), 24 hours, 7 days a week.

⌂ Equal Housing Lender

Tomer Fridman Case No. 1:16-bk-11729MB   Document Production

10345

# WELLS FARGO

## Check Details

| | |
|---|---|
| **Check Number** | 1961 |
| **Date Posted** | 08/10/16 |
| **Check Amount** | $9,477.00 |





## *Note

The account number, signature, and endorsement are removed from the image(s) for security reasons.
To obtain a full copy of the image, please call us at 1-800-TO-WELLS (1-800-869-3557), 24 hours, 7 days a week.

⌂ Equal Housing Lender

## WELLS FARGO

## Check Details

| | |
|---|---|
| **Check Number** | 2108 |
| **Date Posted** | 03/13/17 |
| **Check Amount** | $2,000.00 |





## *Note

The account number, signature, and endorsement are removed from the image(s) for security reasons.
To obtain a full copy of the image, please call us at 1-800-TO-WELLS (1-800-869-3557), 24 hours, 7 days a
week.

⌂ Equal Housing Lender

Exhibit 7

# WELLS FARGO

## Check Details

**Check Number**          1007

**Date Posted**           02/06/17

**Check Amount**          $1,000.00





## *Note

The account number, signature, and endorsement are removed from the image(s) for security reasons.
To obtain a full copy of the image, please call us at 1-800-TO-WELLS (1-800-869-3557), 24 hours, 7 days a
week.

⌂ Equal Housing Lender

Tomer Fridman Case No. 1:16-bk-11729MB    Document Production

10472

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

POB 3906
Thousand Oaks, CA 91359

A true and correct copy of the foregoing document entitled: **SUPPLEMENT - OPPOSITION TO MOTION TO VALUE**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _8/11/2017_, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

US Trustee, ustpregion16.wh.ecf@usdoj.gov; William McDonald III,caecf@tblaw.com; Erica Loftis, erica.loftis@ buckleymadole.com; Jamie Hanawalt/ Gilbert Yabes, ecfcacb@aldridgepite.com; Todd Garan, ch11ecf@ aldridgepite.com; Daimler Trust, notices@bkservicing.com;Daniel Fujimoto, wdk@wolffirm.com; Kristin Zilberstein/ Kelly Raftery, bknotice@mccarthyhothus.com; William Brownstein, brownsteinlaw.bill@gmail.com; Margaux Ross, margaux.ross@ usdoj.gov; Adam Barasch, and@severson.com; Alan Forsley, alan.forsley@flpllp.com; Daniel Fujimoto, wdk@wolffirm.com; Stella Havkin, havkinlaw@earthlink.net; Randall Mroczynski, randym@ cookseylaw.com; Jennifer Musial, jennifer.r.musial@salliemae.com; Valerie Smith, claims@recoverycorp.com

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _8/11/2017_, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Tomer Fridman, 25420 Prado de las Peras, Calabasas, CA 91302
Parties listed on attached mailing matrix.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _8/11/2017_, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Hon. Martin Barash, 21041 Burbank Blvd Ctrm 303, Woodland Hills, CA 91367

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 8/11/2017 | Henry D. Paloci III | /s/ Henry D. Paloci III |
|-----------|---------------------|-------------------------|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Label Matrix for local noticing
0973-1
Case 1:16-bk-11729-MB
Central District of California
San Fernando Valley
Fri Aug 11 07:17:44 PDT 2017

Christiana Trust, a division of Wilmington Tr
14841 Dallas Parkway, Suite 300
Dallas, TX 75254-7883

Daimler Trust
c/o BK Servicing, LLC
PO Box 131265
Roseville, MN 55113-0011

Deutsche Bank National Trust Company, as Tru
The Wolf Firm
2955 Main Street Second Floor
Irvine, CA 92614-5909

Fay Servicing, LLC
Aldridge Pite, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-7921

Navient Solutions, LLC
220 Lasley Ave
Wilkes-Barre, PA 18706-1430

Trojan Capital Investments LLC
2618 San Miguel Dr. Ste 316
Newport Beach
Newport Beach, CA 92660-5437

United States Trustee (SV)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017-3560

San Fernando Valley Division
21041 Burbank Blvd,
Woodland Hills, CA 91367-6606

Ally
PO Box 380901
Bloomington, MN 55438-0901

Ally Bank
PO Box 130424
Roseville MN 55113-0004

American Express Centurion Bank
c/o Becket and Lee LLP
PO Box 3001
Malvern  PA 19355-0701

Andrew Kussmaul
Buckley Madole, P.C.
PO Box 9013
Addison, TX 75001-9013

Asset Acceptance, LLC
P.O. Box 2036
Warren, MI 48090-2036

BANK OF AMERIC ,A NATIONAL ASSOCIATION
C/O C T CORPORATION SYSTEM
818 WEST SEVENTH STREET, 2ND FLOOR
LOS ANGELES, CA 90017-3425

BANK OF AMERICA, NATIONAL ASSOCIATION
150 N COLLEGE STREET, NC1-028-17-06
CHARLOTTE, NC 28255-0001

Bank Of America, N.A.
PO BOX 31785
Tampa, FL 33631-3785

Bank of America, N.A.
PO Box 15312
Wilmington, DE  19850-5312

Bank of America, N.A.
Tony Harrison
PO Box 982284
El Paso, TX 79998-2284

Buckley Madole PC
PO Box 9013
Addison, TX 75001-9013

CIT BANK, N.A.
c/o CT CORPORATION SYSTEM
818 WEST SEVENTH STREET, 2ND FLOOR
LOS ANGELES, CA 90017-3407

CITBANK NA
1 CIT DRIVE
LIVINGSTON, NJ 07039-5703

COUNTRYWIDE HOME LOAN ,S INC.
c/o CT CORPORATION SYSTEM
818 WEST SEVENTH STREET, 2ND FLOOR
LOS ANGELES, CA 90017-3407

COUNTRYWIDE HOME LOANS, INC.
150 N COLLEGE STREET, NC1-028-17-06
CHARLOTTE, NC 28255-0001

Calvary SPC I LLC
2618 San Miguel Dr., Ste 316
Newport Beach, CA 92660-5437

Calvary SPC I LLC
PO Box 27288
Tempe, AZ 85285-7288

Cavalry SPV I, LLC
500 Summit Lake Drive, Ste 400
Valhalla, NY 10595-1340

Cavalry SPV I, LLC
c/o Bass & Associates, P.C.
3936 E. Ft. Lowell Rd., Suite 200
Tucson, AZ 85712-1083

Cavalry SPVI, LLC
POI Box 29482 MAC S4101-08C
Phoenix, AZ 85038-9482

Chase
PO Box 24696
Columbus, OH 43224-0696

Chase Records Center
Attn: Correspondence mail
700 Kansas Lane
Monroe, LA 71203-4774

Christiana Trust
Wilmington Savings Fund Society, FSB
939 W North Avenue, Ste 680
Chicago, IL 60642-1231

Christiana Trust, Trustee (See 410)
c/o FAY SERVICING, LLC
Bankruptcy Department
939 W. North Avenue Suite 680
Chicago, Illinois 60642-1231

Commissions Funding Solutions
1902 Wright Pl. Ste 200
Carlsbad, CA 92008-6583

DEUTSCHE BANK
60 WALL STREET
NEW YORK, NY 10005-2858

Daimler Trust
PO Box 5209
Carol Stream, IL  601975209

Deutsche Bank National Trust Company
c/o Select Portfolio Servicing, Inc.
P.O. Box 65250
Salt Lake City UT 84165-0250

Don A Madden III, President
Trojan Capital Investments, LLC
2618 Swan Miguel Dr Ste 316
Newport Beach, CA 92660-5437

Employment Development Department
PO Box 826880
Sacramento, CA 94280-0001

FNB Omaha
PO Box 3412
Omaha, NE 68103-0412

FRANCHISE TAX BOARD
BANKRUPTCY SECTION MS A340
PO BOX 2952
SACRAMENTO CA 95812-2952

First National Bank of Omaha
1620 Dodge St., Stop Code 3105
Omaha, NE 68197-0002

Franchise Tax Board
PO Box 2952
Sacramento, CA 95812-2952

Franchise Tax Board Chief Counsel
PO Box 1720 MS: A-260
Rancho Cordova, CA 95741-1720

Franchise Tax Board Claim Agent
George Guido
Sacramento, CA 95812-2952

George Guido
Franchise Tax Board BK Sec. MS A340
PO Box 2952
Sacramento, CA 95812-2952

Henry D Paloci III
2800 Camino Dos Rios #101A
Newbury Park, CA 91320-1138

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

Isadora Fridman
3915 Prado del Maiz
Calabasas, CA 91302-3633

JPMorgan Chase Bank, National Association
c/o Chase Records Center
Attn: Correspondence Mail, Mail Code: LA
700 Kansas Lane
Monroe, LA 71203-4774

Kia Vang, Bankruptcy Agent
Ally Servicing LLC
4000 Lexington Ave. N Ste 100
Shoreview, MN 55126-3196

Lisa Looney
Midland Credit Management, Inc.
PO Box 2036
Warrren, MI 48090-2036

Loan Me
PO Box 5645
Orance, CA 92863-5645

Los Angeles County Tax Collector
PO Box 54110
Los Angeles, CA 90054-0110

MB Fin Svc
PO Box 961
Roanoke, TX 76262-0961

MTC FINANCIAL INC  DBA TRUSTEE CORPS
17100 GILLETTE AVENUE
IRVINE, CA 92614-5603

MTC FINANCIAL INC. DBA TRUSTEE CORPS
2112 BUSINESS CENTER DRIVE, FLOOR 2
IRVINE, CA 92612-7135

Main Street Acquisition Corp
c/o Becket and Lee LLP
PO Box 3001
Malvern PA 19355-0701

Mercedes Benz Financial Services
PO Box 961
Roanoke, TX 76262-0961

Mercedes Benz of Calabasas
24181 Calabasas Rd
Calabasas, CA 91302-1512

Midland Credit Management, Inc.
PO Box 2036
Warren, MI 48090-2036

NBS DEFAULT SERVICES LLC
301 EAST OCEAN BOULEVARD, # 1720
LONG BEACH, CA 90802-8813

Nancy Craft
Amex
1620 Dodge St Stop Code 3105
Omaha, NE 68197-0003

Navient Solutions, Inc. on behalf of
United Student Aid Funds, Inc.
Attn: Bankruptcy Litigation Unit E3149
PO Box 9430
Wilkes Barre, PA 18773-9430

Nordstm/Td
13531 E Caley Avservice Service
Englewood, CO 80111

ONEWEST BANK
C/O C T CORPORATION SYSTEM
818 WEST SEVENTH STREET, 2ND FLOOR
LOS ANGELES, CA 90017-3407

ONEWEST BANK
C/O FINANCIAL FREEDOM
2900 ESPERANZA CROSSING
AUSTIN, TX 78758-3658

ONEWEST BANK
C/O MTC FINANCIAL INC. DBA TRUSTEE CORPS
17100 GILLETTE AVENUE
IRVINE, CA 92614-5603

ONEWEST BANK, A DIVISION OF CIT BANK, N.A.
P.O. BOX 7056
PASADENA, CA 91109-7056

PRA Receivables Management, LLC
PO Box 41021
Norfolk, VA 23541-1021

Palatino Homeowners Association
c/o Mink Condominium Management
4040 Glencoe Avenue
Marina del Rey, CA 90292-5608

Payment Processing Center
PO Box 78367
Phoenix, AZ 85062-8367

Platino HOA c/o Mink Management
4040 Glencoe Ave
Marina del Rey, CA 90292-5608

(p)PORTFOLIO RECOVERY ASSOCIATES LLC
PO BOX 41067
NORFOLK VA 23541-1067

Raymond Cruz
Calvary Portfolio Services, Inc
500 Summit Lake Dr, Ste 400
Valhalia, NY 10595-2322

Rita Torres
Bass & Associates, P.C.
3936 East Ft. Lowell Rd Ste 200
Tucson, AZ  85712-1083

SPECIAL DEFAULT SERVICES, INC.
17100 GILLETTE AVENUE
IRVINE, CA 92614-5603

SYNCB/JCP
4125 Windward Plaza
Alpharetta, GA 30005-8738

(p)CALIFORNIA STATE BOARD OF EQUALIZATION
ACCOUNT REFERENCE GROUP MIC 29
P O BOX 942879
SACRAMENTO CA 94279-0029

State of California
Bankruptcy Section MS A340
Sacramento, CA

State of California Board of Equalization
400 N Street, MIC:73
Sacramento, CA 95814

THE BANK OF NEWYORK MELLON CORPORATION
225 LIBERTY STREET
NEWYORK, NY 10286-0001

TROJAN CAPITAL INVESTMENT IS LLC
1712 PIONEER AVENUE, SUITE 5333
CHEYENNE, WY 82001-4406

Tony Harrison
Bank of America
PO Box 982284
El Paso, TX 79998-2284

Trojan Capital Investments, LLC
2618 Swan Miguel Drive, Ste 316
Newport Beach, CA 92660-5437

Trojan Capital Investments, LLC
28786 Network Place
Chicago,  IL 60673-1287

(p)US BANK
PO BOX 5229
CINCINNATI OH 45201-5229

U.S. Small Business Administration
Attn: So Cal Legal Unit
330 North Brand Blvd., Ste 1200
Glendale, CA 91203-2320

USA Funds MC E2148
PO Box 6180
Indianapolis, IN 46206-6180

United States Dept of Justice
PO Box 683
Washington, DC 20044-0683

Wells Fargo Bank Payment Remittance
PO Box 6426
Carol Stream, IL 60197-6426

Wells Fargo Bank, N.A.
Business Direct Division
P.O. Box 29482
Phoenix, AZ 85038-9482

Zach Brown, Kim Marlo
1902 Wright Place Ste 200
Carlsbad, CA 92008-6583

Stella A Havkin
Havkin & Shrago
20700 Ventura Blvd
Ste 328
Woodland Hills, CA 91364-6282

Tomer Fridman
25420 Prado De Las Peras
Calabasas, CA 91302-3656

William Brownstein
11755 Wilshire Blvd Ste 1250
Los Angeles, CA 90025-1540

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

INTERNAL REVENUE SERVICE
300 N LOS ANGELES ST
MS 5022
LOS ANGELES, CA  90012

Portfolio Recovery Associates, LLC
PO Box 12914
Norfolk, VA 23541

(d)Portfolio Recovery Associates, LLC
c/o Best Buy Credit Card
POB 41067
Norfolk VA 23541

State Board of Equalization
PO Box 942879
Sacramento, CA

(d)State of California Board of Equalization
450 N Street, MIC:73
Sacramento, CA 95814-0073

U.S. BANK
C/O U.S. BANCORP
800 NICOLLET MALL
MINNEAPOLIS, MN 55402

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Ally Bank

(u)BANK OF AMERICA, N.A.

(u)Christiana Trust, a division of Wilmington

(du)Christiana Trust, a division of Wilmingto

(u)Courtesy NEF

(u)Ewing Realty Group, Inc.

(u)JP Morgan Chase Bank N.A.

(d)Daimler Trust
c/o BK Servicing, LLC
PO Box 131265
Roseville, MN 55113-0011

(d)Navient Solutions, LLC
220 Lasley Ave
Wilkes-Barre, PA 18706-1430

(u)United States Attorney's Office
Federal Bldg, Room 7516
300 N Los Angeles, CA

End of Label Matrix
Mailable recipients    96
Bypassed recipients    10
Total                 106