Stella Havkin, SBN #134334
HAVKIN & SHRAGO
ATTORNEYS AT LAW
20700 Ventura Boulevard, Suite 328
Woodland Hills, California 91364
Telephone: (8181) 999-1568
Facsimile: (818) 305-6040

[Proposed] Attorneys for Debtor and Debtor in Possession TOMER FRIDMAN

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| IN RE:<br><br>TOMER FRIDMAN,<br><br>    Debtor and Debtor in Possession . | CASE NO: 1:16-bk-11729-MB<br><br>Chapter 11<br><br>**DEBTOR'S OPPOSITION TO CREDITOR TROJAN CAPITAL INVESTMENTS, LLC'S MOTION TO DISMISS PURSUANT TO 11 U.S.C.§ 1112(b); DECLARATIONS OF TOMER FRIDMAN AND STELLA HAVKIN**<br><br>Date: September 5, 2017<br>Time: 1:30 p.m.<br>Ctrm: 303 |

    Tomer Fridman, Debtor and Debtor in Possession ("Debtor"), hereby files his Opposition to the Motion to Dismiss Pursuant to 11 U.S.C.§1112(b) (the "Motion") filed by creditor Trojan Capital Investments, LLC ("Trojan") and requests that Trojan's Motion be denied in its entirety.

DEBTOR'S OPPOSITION TO MOTION TO DISMISS

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

Debtor Tomer Fridman is an individual and One Hundred Percent (100%) owner of White City 26 Inc. Trojan is the second trust deed holder on his residence who has been extremely aggressive and clear in its desire to foreclose on the Debtor's residence.

Trojan's Motion makes numerous allegations without citing to any case law that would support its position even assuming its allegations were accurate and would support the dismissal of this Chapter 11 case. Virtually every debtor in a bankruptcy case is a Debtor in bankruptcy because such a debtor in some way mismanaged his/her finances. Without such mismanagement, debtors would not need to file for bankruptcy. Equally, the Debtor in this case has not been perfect with his finances either before the filing of his bankruptcy case or since then. However, while in this Chapter 11 case, the Debtor has acted in accordance with advice provided to him. He does not know that he is supposed to employ professionals. That is the job of an attorney represented the Debtor in Possession. At worst, this Debtor received bad advice and has acted in accordance with such advice.

Further, Trojan's Motion is disingenuous since at the August 11, 2017 hearing ("August hearing"), this Court instructed the parties to meet and confer regarding some, if not all, the issues raised in Trojan's Motion. Trojan's filing of its Motion within several hours of the August 11, 2017 hearing is indicative of Trojan's intent to circumvent this Court's instructions and to make no attempt to resolve the issues. Moreover, Trojan's Motion is premature since the Debtor has retained new counsel who substituted in on or about August 2, 2017 mainly to remedy the issues in the case and to file a plan. The Debtor should be given an opportunity to address and correct the issues raised by the Court, as well as virtually the same the issues raised by Trojan in this Motion. In fact, the Court instructed Debtor's counsel to provide further explanation, by August 28, 2017, regarding several entries in the monthly operating reports filed by the Debtor. See, Havkin Declaration, ¶2. The filing of this Motion attempts to circumvent the deadlines imposed the Court.

In addition, this is Trojan's second attempt to have the case dismissed in its entirety. A few days before the filing of this Motion, Trojan also filed a Motion for Relief from Stay against this Debtor's residence. This is despite the fact that the Court has scheduled a valuation hearing of the same property for a hearing date scheduled five days later.[1] The filing of this Motion is indicative of the fact that Trojan is aware that the valuation presented by its appraisal is unlikely to stand up to scrutiny. Otherwise, Trojan could wait a week.

Regardless, Trojan has failed to demonstrate any bad faith of the part of the Debtor. Therefore, the Debtor requests that the Court deny Trojan's Motion.

## II.

## THE DEBTOR HAS NOT ENGAGED IN BAD FAITH WHICH WARRANTS THE DISMISSAL OF HIS CASE AT THIS TIME

To determine whether a debtor has filed a petition in bad faith, courts weigh a variety of circumstantial factors such as whether:

(1) The debtor has only one asset;

(2) The debtor has an ongoing business to reorganize;

(3) There are any unsecured creditors;

(4) The debtor has any cash flow or sources of income to sustain a plan of reorganization or to make adequate protection payments.

(5) The case is essentially a two party dispute capable of prompt adjudication in state court. (*In re St. Paul Self Storage Ltd. Partnership,* 185 B.R. 580, 582-83 (9th Cir. BAP 1995). (*See, also In re Stolrow's, Inc.*, 84 B.R. 167, 171 (B.A.P. 9th Cir. 1988) (considering eight factors); I*n re Family Health Svs. Inc.*, 101 B.R. 618, 626-627 (Bankr. C.D. Cal. 1989).)

In this case, the factors weigh against dismissal. First, the Debtor has multiple assets. All assets of the estate must be taken into consideration together for purposes of asset disposition and treatment of claims. Although the Debtor has a business, White City 26 Inc., the business is not the debtor in this case and therefore, has no need to reorganize. Second, the Debtor has a number

---

[1] Debtor will be filing an opposition to Trojan's Motion for Relief from Stay in a separate pleading.

3
DEBTOR'S OPPOSITION TO MOTION TO DISMISS

of unsecured creditors with claims against the estate. Third, there is a source of funds from which to make plan payments, including the Debtor's significant income and potential contribution from his mother to the plan. The cash funds alone will be sufficient to make any necessary adequate protection payments. Those funds, along with any further potential cash to be derived from any contributions will be sufficient to make the plan payments. See, Declaration of Tomer Fridman ("Fridman Declaration"), ¶2.

Overall, there is no bad faith conduct exhibited by the Debtor to indicate that he has no real intention of reorganization. "Determining bad faith, however, requires a difficult distinction between permissible and impermissible motives. . . . We therefore must require a pattern of concealment, evasion and direct violations of the Code or court order which clearly establishes an improper motive before allowing dismissals for bad faith." *In re Kerr*, 908 F.2d 400, 404 (8th Cir. 1990).

In *Kerr*, the Eight Circuit held that:

> After carefully reviewing the record, we agree that there is strong evidence in support of the bankruptcy court's finding of bad faith. The debtors violated court orders by failing to provide monthly financial reports and by failing to segregate and account for dealings with Chance Acre. There was a pattern of evasiveness and feigned losses of memory during hearings. Chance Land refused to regard the Bank's debt as fully secured, refused to acknowledge the full amount owed Nancy Kerr, and failed to recognize federal tax liability. There was also a substantial amount of self-dealing and asset manipulation without court approval: assets were commingled with Chance Acre; land was sold at less than value to Kerr's current wife with the taxes paid; more than $79,000 was distributed from Chance Land to Kerr; more than $20,000 was paid to Kerr's stockbrokers to cover stock losses; and a personal bond of more than $20,000 was posted by Chance Land on behalf of Charles Kerr. In addition, countless frivolous motions were introduced and actions commenced in an effort to frustrate the creditors. Many were clearly groundless and had already led both the federal district court and Iowa state court to sanction the debtors and their attorney. . . . The bankruptcy court also found that reorganization was impossible.

*Id.*

By comparison, the record in this case shows that the Debtor has the desire and ability to reorganize, and is fully cooperating and complying with the bankruptcy process to do so. The Debtor employed bankruptcy counsel, and recognized that he needed new bankruptcy counsel and

1. has recently substituted in new counsel.  Further, the Debtor has filed completed schedules,
2. attended the meeting with creditors and initial debtor examination as well as attended an eight
3. hour Rule 2004 exam conducted by Trojan's counsel.  See, Fridman Declaration, ¶3.  The Debtor
4. is not refusing to acknowledge any of the claims held by creditors.  Reorganization is possible,
5. with a willingness to file a disclosure statement and plan of reorganization by the deadline of
6. October 16, 2017 as ordered by the Court.
7.     Trojan asserts otherwise.  However, Trojan's assertions and analysis are misleading.
8. Trojan alleges that the Debtor has mismanaged his funds and has a practice of redepositing funds.
9. While the Debtor withdrew moneys from his corporate account in cashier's checks.  He
10. redeposited them in full.  This practice has stopped several months ago when the Debtor was
11. notified that this was improper.  The practice began when the Debtor was a victim of fraud in his
12. corporate account on several occasions.  He believed that keeping money in cashier's checks was
13. safer.  In fact, as late as last month, the Debtor has suffered yet another series of fraudulent
14. transactions in his corporate account.  This is being dealt with by the Debtor and his bank.  It is
15. anticipated that the moneys improperly taken from the account will be returned to the account in
16. the near future.   See, Fridman Declaration, ¶4.
17.     In addition, Trojan cites as alleged evidence of bad faith to prepetition events going back to
18. April 2015.  Such events are irrelevant to its Motion, as the petition date was June 9, 2016.
19. Further, the Debtor was in a Chapter 13 case until December, 2016.   This Motion should only
20. refer to actions of the Debtor during this Chapter 11 case.  Additionally, if Trojan had meet and
21. conferred with Debtor's counsel, as instructed by the Court, most of its allegations against the
22. Debtor would have been adequately explained.
23.     Trojan further alleges that the Debtor has not paid the senior lienholder on his primary
24. residence as alleged evidence of bad faith.  Trojan fails to acknowledge that the Debtor was
25. paying the senior lienholder but was instructed by the Court to stop paying.  See, Fridman
26. Declaration, ¶5.
27.     Trojan also alleges that the Debtor has "at least one employee", however, the employee
28. referred to is an employee of White City 26 Inc. and not the Debtor, himself.  Fridman

1  Declaration, ¶6.  Therefore, the argument is meritless.

2      Trojan also objects to the payments by the Debtor to unapproved professionals.  The
3  Debtor was not properly advised by prior counsel and should not be held accountable for incorrect
4  advice.  On August 18, 2017, Debtor's current counsel filed an application to employ the Debtor's
5  real estate appraiser, and is preparing applications to employ the individual who prepared the
6  monthly operating reports and any other professionals that need to be employed.  See, Havkin
7  Declaration, ¶3.

8      With respect to Trojan's allegations of payment of inappropriate expenses by the Debtor,
9  Trojan's counsel could have sent an email to Debtor's counsel seeking an explanation prior to
10 filing its Motion.  This would have saved thousands of dollars in fees on both sides.  Specifically,
11 Trojan refers to payment of expenses for Viewpoint School and another school as improper
12 spending by the Debtor.  These were for private school tuition for the Debtor's then live in
13 girlfriend's daughter.  These were pre-Chapter 11 payments and have nothing to do with the case
14 currently.  The Debtor is not paying any private school expenses at this time.  See, Fridman
15 Declaration, ¶5.  Paying for private school is not evidence of bad faith in itself.

16     Additionally, Trojan asserts there were improper payments to insiders – the debtor's father
17 and mother.  However, payments were made to the Debtor's father in the ordinary course of
18 business in connection with a loan his father made to the Debtor.  While they are not listed in the
19 petition, the statement of affairs will be amended to reflect this fact.  Moreover, the Debtor is in
20 partnership with his mother.  His mother's corporation routinely advances moneys for expenses
21 for their joint residential listings.  The Debtor's corporation reimburses his mother's corporation
22 for such advances in the ordinary course of conduct.  See, Fridman Declaration, ¶6.

23     However, even assuming that some of the factors may indicate behavior by a debtor that is
24 not ideal and even where there is a showing of bad faith, a bankruptcy case should not be
25 dismissed where it will not be in the best interests of creditors.  See, e.g., *In re Western Pac.*
26 *Airlines, Inc.*, 218 B.R. 590, 596 (Bankr. D. Colo. 1998).)  Here, dismissal will only allow Trojan
27 to foreclose on the Debtor's residence achieving no benefit to the Debtor or the other creditors of
28 the estate.  The Debtor would have to move and incur significant expenses in doing so.  The

remaining creditors to undergo extensive and costly litigation to collect on their debt. On the other hand, reorganization through bankruptcy will provide for all creditors to receive a fair and equitable distribution, save substantial time, fees and costs that would otherwise be incurred by each creditor, and allow for the maximum possible return for the estate by administering the assets in an orderly fashion. Creditors will also benefit from the supervision and jurisdiction of the Bankruptcy Court.

The Debtor asserts that Trojan and the other creditors will benefit from the continued Chapter 11 bankruptcy case. There will be greater oversight over the Debtor's actions. When the Debtor realizes income and profits from his business, all parties in interest will be made aware of such changes and will receive a greater distribution on their claims. Ultimately, the Debtor will be able to confirm a plan of reorganization that provides payment to all creditors.

At the very least, a motion to dismiss is premature where the Debtor has not yet presented or confirmed his plan of reorganization. (See, e.g., In re Hyatt, 479 B.R. 880, 897 (Bankr. D. N.M. 2012).) Moreover, there is "the firmly established rule that bankruptcy courts should not precipitously terminate a Chapter 11 case by prematurely converting or dismissing the case." *In re McDermott*, 78 B.R. 646, 651 (Bankr. N.D. N.Y. 1985). Therefore, the Court should deny the Motion to Dismiss so that all creditors will have the opportunity to consider a plan of reorganization that will satisfy their claims.

### III.

### **CONCLUSION**

Based upon the foregoing, Debtor respectfully request that Trojan's Motion be denied.

Dated: August 22, 2017                    **HAVKIN & SHRAGO**

By: __/s/ Stella Havkin_____
STELLA HAVKIN
[Proposed] Attorneys for Debtor and Debtor in Possession Tomer Fridman

## DECLARATION OF TOMER FRIDMAN

I, Tomer Fridman, declare

1. I am the Debtor and Debtor in Possession in the instant case. I have personal knowledge of the facts stated herein, except where stated on information and belief, and where so stated, I am informed and believe that such facts are true and correct. If called and sworn as a witness, I could and would competently testify to the above.

2. Although I have a business, White City 26 Inc., the business is not the debtor in this case and therefore, has no need to reorganize. Moreover, I have a number of unsecured creditors with claims against the estate. There is a source of funds from which to make plan payments, including my significant income and potential contribution from my mother to the plan. The cash funds alone will be sufficient to make any necessary adequate protection payments. Those funds, along with any further potential cash to be derived from any contributions will be sufficient to make the plan payments.

3. I employed bankruptcy counsel, and recognized that I needed new bankruptcy counsel and have recently substituted in new counsel. Further, I filed completed schedules, attended the meeting with creditors and initial debtor examination as well as attended an eight hour Rule 2004 exam conducted by Trojan's counsel.

4. Trojan claims that I have mismanaged my funds because I had a practice of redepositing funds. While I withdrew moneys from my corporate account in cashier's checks, I redeposited them in full. This practice stopped several months ago when I was informed that this was improper. This began because I was a victim of fraud in my corporate account on numerous occasions and believed that keeping money in cashier's checks was safer. In fact, as late as last month, I suffered yet another series of fraudulent transactions in my corporate account. This is being dealt with by the bank and

myself and his bank.  It is anticipated that the moneys improperly taken from the account will be returned to the account in the near future.

5.  Trojan refers to expenses for Viewpoint School and another school as improper spending by me.  These were for private school tuition for my then live in girlfriend's daughter.  These were pre-Chapter 11 payments and have nothing to do with the case currently.  I am not paying any private school expenses at this time.

6.  Additionally, Trojan asserts there were improper payments to insiders – my father and mother.  However, payments were made to my father in the ordinary course of business in connection with a loan my father made to me.  While they are not listed in the petition, the statement of affairs will be amended to reflect this fact.  Moreover, I am partnership with my mother.  My mother's corporation routinely advances moneys for expenses for our joint residential listings.  My corporation reimburses my mother's corporation for such advances in the ordinary course of conduct.

Executed on this 22nd day of August, 2017, at Calabasas, California.  I declare under penalty of perjury pursuant to the laws of United States of America that the foregoing is true and correct.

*Tomer Fridman*
_____
TOMER FRIDMAN

# DECLARATION OF STELLA HAVKIN

I, Stella Havkin, declare:

1. I am an attorney at law duly admitted to practice in the State of California and, inter alia, before the United States District Court for the Central District of California and this Court. I am proposed general insolvency counsel for Tomer Fridman ("Debtor", the Chapter 11 Debtor in the above-captioned case. I have personal knowledge of the facts stated herein, except where stated on information and belief, and where so stated, I am informed and believe that such facts are true and correct. If called and sworn as a witness, I could and would competently testify to the above.

2. At the August 11, 2017 hearing ("August hearing"), this Court instructed the parties to meet and confer regarding some, if not all, the issues raised in Trojan's Motion. In fact, the Court instructed me to provide further explanation, by August 28, 2017, regarding several entries in the monthly operating reports filed by the Debtor prior to my time in the case.

3. On August 18, 2017, I counsel filed an application to employ the Debtor's real estate appraiser, and am preparing applications to employ the individual who prepared the monthly operating reports and any other professionals that need to be employed.

Executed on this 22nd day of August, 2017, at Woodland Hills, California. I declare under penalty of perjury pursuant to the laws of United States of America that the foregoing is true and correct.

_____
STELLA HAVKIN

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

20700 Ventura Boulevard, Suite 328, Woodland Hills, CA 91364

A true and correct copy of the foregoing document entitled (*specify*): Debtor's Opposition to Trojan's Motion to Dismiss Chapter 11 Case; Declarations of Tomer Fridman and Stella Havkin
_____
_____
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 08/22/2017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

havkinlaw@earthlink.net; stella@havkinandshrago.com    ustpregion16.wp.ecf@usdoj.gov
anb@severson.com, dgl@severson.com;efiling@severson.com    wdk@wolffirm.com
alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy.flores@flpllp.com
ch11ecf@aldridgepite.com, TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com    claims@recoverycorp.com

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 08/22/2017, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Debtor(s) (VIA E-MAIL; ADDRESS PROTECTED BY ATTORNEY-CLIENT PRIVILEGE)
Honorable Martin R. Barash via court drop box

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 08/22/2017 | Stella Havkin | /s/ Stella Havkin |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                   **F 9013-3.1.PROOF.SERVICE**

ecfcacb@aldridgepite.com, jhanawalt@ecf.inforuptcy.com

Brownsteinlaw.bill@gmail.com

Erica.Loftis@BuckleyMadole.com, Susana.Hernandez@BuckleyMadole.com

Caecf@tblaw.com, wfm@tblaw.com;snchampney@tblaw.com

randym@cookseylaw.com

jennifer.r.musial@salliemae.com

ecfnotifications@ghidottilaw.com

hpaloci@hotmail.com, hpaloci@calibankruptcy.com

bknotice@mccarthyholthus.com, kraftery@ecf.courtdrive.com

ecfcacb@aldridgepite.com, GRY@ecf.inforuptcy.com;gyabes@aldridgepite.com